thereto by the complainant, I seriously doubt whether the defendants were entitled to be credited with full amount of book accounts turned over. There were over $15,000 of them in amount, and although, by the contract, the defendants substantially guarantied them, there is a large percentage noncollectible. And it is not to be overlooked that these accounts included not only the trade price of the goods sold, but the defendants' profits. As the master has stated the account, of course the amounts of cash drawn out by the defendants after March 1, 1903, and, as appears by the cashbook, mainly, if not entirely, derived from collection of the accounts charged in full to the complainant, should be charged to the defendants.

A decree may be entered in favor of the complainant overruling all exceptions to the master's report, and approving and confirming the same, dismissing the defendants' cross-bill, and for a money judgment against the defendants for the sum of $2,360.88, with interest from 8th of May, 1903, at 7 per cent., and for all costs of suit. Complainant's original bill to be retained for settlement of receiver's accounts and compensation.

---

In re KANE.

(District Court, N. D. New York.   May 9, 1904.)

No. 1,276.

1. BANKRUPTCY—ADVERSE CLAIMS—COURTS—JURISDICTION.
    A bankruptcy court has jurisdiction to determine in the first instance whether an asserted adverse claim to property claimed by the bankrupt's trustee is colorable or actual.

2. SAME—SUMMARY PROCEEDINGS.
    Where an adverse claim to property claimed by a bankrupt's trustee is colorable merely, or clearly a nullity, the referee has jurisdiction to require a surrender of the property to the trustee in bankruptcy, or to determine such adverse claim by summary proceedings; but, if it appears that the claim is asserted in good faith, and substantiated by verified pleadings or oral testimony, the issue can be determined only by a plenary suit.

In Bankruptcy.

T. S. Fagan (H. D. Bailey, of counsel), for trustee.
Henry J. Speck, for National State Bank of Troy.

HAZEL, District Judge.   Certain questions have been certified to the court for decision by Referee King.   Upon the petition of the trustee in bankruptcy, an order was issued by the referee directing the National State Bank of Troy to show cause why certain moneys of which the bankrupt is the owner, and which came into the possession of the bank after the bankruptcy proceedings were instituted, should not be paid over to the trustee.   On behalf of the bank an answer, later a proposed answer, and finally a demurrer to the jurisdiction, were

¶ 2. See Bankruptcy, vol. 6, Cent. Dig. § 447.

filed. The attorney for the trustee moved the court to cancel from the files the demurrer on the ground that an answer joining issue had previously been filed, and therefore no special plea to the jurisdiction of the court should be entertained. It was stated by counsel for the bank at the preliminary hearing that, if the referee decided the jurisdictional point adversely to his contention, he desired to file an amended answer traversing the allegations set forth in the petition. The ruling upon these questions was reserved by the referee. Subsequently he decided that the bankruptcy court had authority and jurisdiction in a summary proceeding to compel the delivery to the trustee of money or other property belonging to the bankrupt, where it appears that such property is merely held as agent or bailee, and where it is withheld from the possession of the trustee. This holding is justified by the decisions. Louisville Trust Co. v. Cominger, 184 U. S. 25, 22 Sup. Ct. 293, 46 L. Ed. 413; Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405; In re Knickerbocker (D. C.) 121 Fed. 1004; Jaquith v. Rowley, 188 U. S. 620, 23 Sup. Ct. 369, 47 L. Ed. 620. The referee is quite right when he says the bankruptcy court has jurisdiction to determine in the first instance whether an asserted adverse claim to property is colorable or actual. If it be clearly a nullity, the referee has jurisdiction, and may by summary process require the surrender of the property so withheld to the trustee in bankruptcy. On the other hand, should evidence of a claimant satisfy the referee that an adverse right to such possession and control is asserted in good faith, and there is reasonable cause for believing that the intention of the claimant is to protect an asserted right of ownership and control, then the petition of the trustee should be dismissed. The remedy of the trustee for the recovery of the property may then be found in a plenary suit instituted in the proper tribunal. The determination of the respective rights of the parties demands judicial investigation by the referee to ascertain the facts. Both sides are heard, and evidence may be taken, though the conclusions of the court may be based upon the pleadings or affidavits presented to him. He must exercise a sound judicial discretion in the determination of questions of this character, to the end that no injustice be done to either party. If he is satisfied, either from personal knowledge of the facts or from testimony, that an order to show cause ought to be directed to a person charged with having in his possession property belonging to the bankrupt estate, the essential inquiry upon return of the order to show cause, if an adverse claim is made, is whether such claim is colorable or fictitious. In short, if it is a colorable claim, it should be set aside, and the claimant summarily directed to deliver the property to the trustee; but if, as already indicated, the claim is asserted in good faith, substantiated by verified pleadings or by oral testimony, then the objection to the jurisdiction of the court is controlling. In such an event the property is no longer constructively in the possession of the bankrupt and subject to the order of the bankruptcy court.

The certificate of the referee apparently submits the following question for my decision: Was the decision proper, overruling the objection to the jurisdiction of the court, and allowing the National State Bank to interpose its proposed amended answer? This question is an-

swered in the affirmative. I am unable to perceive from an examination of the record any cogent reason for passing upon any other question found in the voluminous briefs submitted by counsel.

---

### In re LEVIN.

#### (District Court, S. D. New York. February, 1904.)

1. BANKRUPTCY—EXAMINATION OF BANKRUPT—PRIVILEGE—CRIMINATING QUESTIONS.

Where a bankrupt was under indictment at the time he was examined before the referee, and was asked as to the accuracy of a creditor's proof of claim, to identify his signatures to certain notes filed by another creditor, whether he knew a third creditor, and whether he was a salesman in the bankrupt's employ, and to identify his checkbook, after testifying that he could tell whether or not a claim had been paid by reference to his checks, the answers to such questions could not by any possibility incriminate him, and hence he was not entitled to refuse to answer on the ground that his answers might so tend.

In Bankruptcy. On certificate of referee.
The following is the opinion of Dexter, Referee:

I, Stanley W. Dexter, one of the referees of said court in bankruptcy, do hereby certify that, in the course of the hearing of said cause before me, the following questions arose, pertinent to the said proceeding, as appears in the copy of the stenographer's record herewith submitted:

(1) The witness declined to answer a question as to the accuracy of the proof of claim of the Consolidated Gas Company for $4.30; stating that he declined to answer—adopting the suggestion of his attorney—on the ground that the answer might tend to incriminate or degrade him. His attorney objected on the ground that the bankrupt was under indictment, and is defendant in several criminal proceedings, and that he need not testify in this proceeding, upon the ground that it would tend to incriminate him. I directed the witness to answer, and he refused.

(2) The witness' attention was called to the claim of Hyman Schlesinger for $850, based on promissory notes, and he was asked to look at the notes and state whether or not the signatures to the notes were his signatures. He declined to answer upon the ground that it would tend to degrade or incriminate him. I directed the witness to answer, and he still refused to answer.

(3) The witness was asked to look at the claim of Abram A. Klasky, and was asked whether he knew Klasky, and refused to answer upon the same grounds. He also refused to answer the question whether or not Klasky was a salesman in his employ. I directed him to answer, and he declined upon the same ground.

(4) In the first part of the examination of the witness, the witness was shown proof of claim filed by Stern Bros., of West Twenty-Third street, for $276.61. He examined the claim, and stated that he knew he was indebted to Stern Bros., but could not state the amount. He believed, however, that one bill was paid, but could not tell which bill, except by reference to the checks in his trunk, which was then in the possession of the trustee. Subsequently the checkbook was handed to him, and he was asked to identify the checkbook, and refused to do so, although directed so to do by me.

(5) Before the bankrupt raised any question of privilege, his counsel objected to his testifying in the proceeding at all, on the ground that the bankrupt was under indictment, and that any answers given in this proceeding might tend to degrade or incriminate him. The bankrupt adopted the suggestion of his counsel, although he stated that he did not know whether or not it would tend to incriminate him.

(6) The bankrupt was asked the following question: "Q. Mr. Levin, are you prepared to say that the answer to any of the questions that have been asked