**Matter of LYKENS HOSIERY MILLS,
Inc., Debtor.**

United States District Court
S. D. New York.
May 15, 1956.
Motion for Reargument Denied
June 18, 1956.

**892**

Booth, Lipton & Lipton, New York City, Harold A. Lipton, Edgar H. Booth, New York City, of counsel, for debtor.

Lord, Day & Lord, New York City, Donald F. Mooney, New York City, of counsel, for claimant.

LEVET, District Judge.

This is a petition by a debtor in possession for review of two orders made and entered by the Referee in Bankruptcy.

The petitioner on July 2, 1954, filed a petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq. A creditor or alleged creditor, Burnsville Hosiery Mills, Inc., hereinafter referred to as "Burnsville," filed a claim in the sum of $24,-375.46 with the office of the Referee. The petitioner, Lykens Hosiery Mills, Inc., objected to the allowance of this claim upon the ground that the petitioner was not indebted to the said Burnsville in the sum claimed and on the further ground that Burnsville was indebted to the petitioner in a certain sum in excess of the claim of the said Burnsville.

On September 14, 1955, an order was made and entered by the Referee, confirming the third amended plan of arrangement of the debtor, pursuant to which Burnsville was to receive 25% of its claim, namely $6,093.87. This fund was deposited by the debtor with this Court.

Petitioner by its written claim for set-off and counterclaim alleged that on or about May 10, 1954, prior to the filing of the arrangement petition, it delivered to Burnsville at its plant in Burnsville, North Carolina, a quantity of yarn of the value of $3,452.61, to be used by Burnsville solely to knit hosiery for petitioner, but only upon petitioner's instructions; that the yarn was delivered to Burnsville and was, and still is, the property of the petitioner. The petition also alleges that no instructions were given by the petitioner to knit the yarn, that the yarn was not used by Burnsville to knit hosiery for petitioner, that it was held by Burnsville subject to further order from petitioner, and that Burnsville has converted the yarn to its own use and benefit. Burnsville, however, although admitting delivery to it of a quantity of yarn, denied the remainder of the allegations of the petitioner, although admitting demand by the petitioner for the return of the yarn by letter dated December 14, 1954, and admitting refusal so to do.

On February 21, 1956, the Referee in Bankruptcy herein made an order allowing the claim of Burnsville in the amount of $24,375.46 and deducted from such allowance the amount of $3,452.61, allowing the claim in favor of Burnsville against the petitioner in the sum of $20,922.85, stating that the claimant's right to the balance of its claim should await the determination of the validity of the debtor's alleged counterclaim and off-set in the amount of said $3,452.61. This we believe was basic error as hereinafter stated.

On or about March 1, 1956, the petitioner filed a petition to review the said order of February 21, 1956.

The question at issue, therefore, in this review is whether under the circumstances above, which we assume petitioner is in a position to prove, the retention of the yarn by Burnsville created a mu-

tual claim which is to be offset directly against the amount due to the debtor, or whether the value of the yarn is to be set-off against the ultimate dividend allowed to Burnsville on the offsetting claims other than that on the yarn alleged to have been converted by Burnsville.

The minutes of the Referee of April 6, 1956, are entitled, "Adjourned Hearing On Objection to Claim No. 19, Filed by Burnsville Hosiery Mills, Inc." At this time an affidavit of Harold A. Lipton, dated April 5, 1956, was submitted by Edgar H. Booth, Esq., of Booth, Lipton & Lipton, attorneys for the debtor. Among other things, it was stated in said affidavit that the order of February 21, 1956 had been made, that a petition for a review had been taken from the said order and contended that no further proceedings were to be taken on the matter until the disposition of the petition for review had been made by the District Court; that the said Harold A. Lipton was actively in charge of the matter and was to be out of the city on April 6th. The affidavit requested adjournment of the matter until a petition for review had been heard and a decision thereon had been rendered by the District Court. Under the circumstances we believe, for reasons subsequently stated, that this procedure sought by the debtor should have been followed.

The Referee, however, on April 6, 1956, denied the motion for adjournment and held "that the matter is adjusted by permitting the entire $24,375.46 to be set off against the debtor" and directed entry of an order. This, therefore, was in fact determining the review in advance and against the debtor. The attorney for Burnsville stated that the date of April 6th was set peremptorily by the Referee as against the debtor and that his client had come from North Carolina for the hearing, ready to testify. (It may very well be that there was at least a reasonable expectation that the court would, pursuant to the correctly applicable law, determine the review before the hearing on April 6, 1956.) The attorney for Burnsville also contended that, in effect, the failure of the debtor to proceed with the hearing was an abandonment of the appeal and moved to dismiss the entire petition. Although this was denied by the Referee, he adhered to the refusal to adjourn and thus the debtor received no hearing on its claim in reference to the yarn.

Subsequently, and on the 9th of April, 1956, an order was made by the Referee dismissing the alleged off-set and the counterclaim in the amount of $3,452.61 and an order was made on the said 9th of April, 1956, whereby the debtor's motion for an adjournment, made on April 6th, was denied, and it was further "Ordered that the said Debtor having failed to prosecute its alleged Offset and Counterclaim in the amount of $3,452.61, that the said Offset and Counterclaim be and the same is hereby denied." Thus, there was in effect no hearing on the issue in question and the failure to prosecute was based solely upon the refusal to adjourn at a time when to proceed might have been futile.

Thereafter on or about April 18, 1956, the petitioner filed a petition for a review of the order of April 9, 1956, so that the combined matter is before this Court for review.

■ The correctness of the Referee's order of February 21, 1956 (which allowed the Burnsville claim to the extent that it exceeded the $3,452.61 claim alleged by the petitioner) depends upon whether or not the Burnsville claim and the petitioner's claim created mutual debts within the meaning of Section 68, sub. a of the Bankruptcy Act, 11 U.S.C. A. § 108, sub. a, which provides:

"In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

This section applies only to those situations where the bankrupt and the creditor owe a debt to one another. It does

894

not include the situation where the bankrupt's property is in the possession of the creditor as bailee or trustee, without color of lien. Brust v. Sturr, D.C.S.D.N.Y.1955, 128 F.Supp. 188; In re Autler, D.C.S.D.N.Y.1938, 23 F.Supp. 756. See also Collier on Bankruptcy, Vol. 4, pp. 716–718. In such cases, title to the property would not be in the creditor, but would, instead, vest in the representative of the bankrupt estate, which, in this case, is the debtor in possession. Therefore, the property could not form the basis for a debt owing to the bankrupt which the creditor could use as an offset on his claim against the bankrupt.

■ In the proceedings before the Referee the petitioner contended that the quantity of yarn, allegedly valued at $3,-452.61, which the petitioner delivered to Burnsville, was, and still is, the property of the petitioner and that Burnsville held said yarn as bailee. If the petitioner were able to establish this contention, it would be entitled, as the representative of the estate of the debtor, to recover from Burnsville the entire amount of its claim, undiminished by any set-off in favor of Burnsville. This recovery could then be used by the petitioner in reduction of the 25% dividend to which Burnsville would be entitled under the third amended plan of arrangement. Gardner v. Chicago Title & Trust Co., 261 U.S. 453, 43 S.Ct. 424, 67 L.Ed. 741; Hood v. Brownlee, 4 Cir., 1933, 62 F.2d 675.

■ The summary disposition of the Burnsville claim by the Referee in his order dated February 21, 1956, which allowed said claim to the extent that it exceeded the petitioner's claim, precludes the petitioner from proving that its claim should not be set off against the face amount of the Burnsville claim and that petitioner's claim should, instead, be applied against the 25% dividend which Burnsville will receive under the third amended plan of arrangement. This action by the Referee was erroneous and, accordingly, the petitioner's application on April 6, 1956, for an adjournment pending a review of the Referee's order dated February 21, 1956, was proper.

The Referee's second order, dated April 9, 1956, denying the petitioner's request for an adjournment pending a review of the first order and dismissing the petitioner's claim on the ground that it failed to prosecute said claim, was also error.

For the reasons as herein stated, the Referee's orders dated February 21, 1956 and April 9, 1956, are hereby reversed and the proceedings are remanded to the Referee to set the matter down for a hearing. However, the petitioner is to compensate the creditor for its expenses, including travel, which, in the determination of the Referee, will be reasonably incurred by the creditor in order for it to attend said hearing.

So ordered.

On Motion for Reargument

The creditor, Burnsville Hosiery Mills, Inc., has moved to reargue this Court's decision dated May 15, 1956, which reversed two orders of the Referee dated February 21, 1956 and April 9, 1956, respectively and which remanded the proceedings for further hearing before the Referee.

Counsel for the creditor state in their brief that the Burnsville claim is not subject to the summary jurisdiction of the bankruptcy court and that the creditor has not consented to such jurisdiction. However, the decision of this Court of May 15, 1956, did not determine said jurisdictional question. Nor did this Court hold that the debtor was entitled to set off its claim against any dividend to which the creditor may be entitled to receive. Indeed, these are issues which should be determined by the Referee after a hearing is had thereon.

■■ The brief now submitted on behalf of the creditor states that Burnsville is not subject to summary jurisdiction with respect to the debtor's claim to property held by the creditor because Burnsville asserts a valid statutory lien on said property pursuant to the General Statutes of North Carolina. Accordingly, it is argued that the debtor's remedy

is a plenary suit in a non-bankruptcy court. This lien claim was not raised by the creditor's counsel on the oral argument nor was it mentioned in the papers submitted on said argument. Said issue is now raised before this Court for the first time in counsel's brief in support of their motion for reargument. Even if it had been set forth, the existence of a valid statutory lien pursuant to the General Statutes of North Carolina, the compliance therewith and whether said claim was an adverse claim existing at the time the petition was filed, are matters to be determined by the Referee by proper inquiry on the basis of the facts presented before him at the hearing. The mere assertion of an adverse claim is not enough. There must be a hearing and a determination that the claim interposed is in good faith, and real, and not merely colorable. In re Meiselman, 2 Cir., 1939, 105 F.2d 995.

In the case of In re Kane, D.C.N.D. N.Y.1904, 131 F. 386, this point was clearly stated by the Court, as follows:

"The referee is quite right when he says the bankruptcy court has jurisdiction to determine in the first instance whether an asserted adverse claim to property is colorable or actual. If it be clearly a nullity, the referee has jurisdiction, and may by summary process require the surrender of the property so withheld to the trustee in bankruptcy. On the other hand, should evidence of a claimant satisfy the referee that an adverse right to such possession and control is asserted in good faith, and there is reasonable cause for believing that the intention of the claimant is to protect an asserted right of ownership and control, then the petition of the trustee should be dismissed. The remedy of the trustee for the recovery of the property may then be found in a plenary suit instituted in the proper tribunal. The determination of the respective rights of the parties demands judicial investigation by the referee to ascertain the facts. Both sides are heard, and evidence may be taken, though the conclusions of the court may be based upon the pleadings or affidavits presented to him. He must exercise a sound judicial discretion in the determination of questions of this character, to the end that no injustice be done to either party. If he is satisfied, either from personal knowledge of the facts or from testimony, that an order to show cause ought to be directed to a person charged with having in his possession property belonging to the bankrupt estate, the essential inquiry upon return of the order to show cause, if an adverse claim is made, is whether such claim is colorable or fictitious." 131 F. at page 387.

The creditor's motion for reargument is denied.

So ordered.