**In re Reginald David HALLMAN and Tammy Jones Hallman, Debtors.**

**Bankruptcy No. C–B–82–554.**

United States Bankruptcy Court,
W.D. North Carolina,
Charlotte Division.

Dec. 2, 1982.

Langdon M. Cooper, trustee pro se.

Wayne Sigmon, Gastonia, N.C., for debtors.

**ORDER DENYING APPLICATION FOR TURNOVER**

MARVIN R. WOOTEN, Bankruptcy Judge.

This cause coming on to be heard and being heard before the undersigned in open court on November 16, 1982, upon the application of Langdon M. Cooper, Trustee, for turn over of a 1978 Dodge Colt claimed

exempt by the debtors. The Court, having heard the evidence presented herein, makes the following:

## FINDINGS OF FACT:

1. On or before August 8, 1982, the debtors owned one automobile, to wit, a 1973 Ford pickup. The certificate of title to said automobile was in the name of the male debtor.

2. On or before August 10, 1982, the debtors owned no real property which was used as their principal residence.

3. As of August 8, 1982, the 1973 Ford pickup had a market value of approximately One Thousand Five Hundred Dollars ($1,500.00).

4. Had the debtors filed for relief under Chapter 7 of the United States Bankruptcy Code on August 8, 1982, they could have exempted the full market value of their 1973 Ford pickup pursuant to the terms of N.C.G.S. Section 1C–1601(a)(2) and (3).

5. On August 8, the debtors sold the 1973 Ford pickup for One Thousand Five Hundred Dollars ($1,500.00) because they were experiencing transmission problems with said vehicle.

6. On or about August 8, 1982, the debtors used the sum of One Thousand Five Hundred Dollars ($1,500.00) received from the sale of their 1973 Ford pickup plus Two Hundred Dollars ($200.00) additional money received from a relative, as a gift, to purchase a 1978 Dodge Colt automobile for the sum of One Thousand Seven Hundred Dollars ($1,700.00), thinking that the exemptions allowed by law would cover the new vehicle.

7. On August 10, 1982, the debtors filed a petition under Chapter 7 of the Bankruptcy Code in this Court and attempted to claim their 1978 Dodge Colt as exempt pursuant to the provisions of N.C.G.S. Section 1C–1601(a)(2) and (3).

8. On November 5, 1982, the trustee brought this action attempting to gain possession of the debtors' 1978 Dodge Colt which has an approximate market value of One Thousand Seven Hundred Dollars

($1,700.00) and which is held by the male debtor free and clear of any liens.

## DISCUSSION:

The trustee bases his claim to possession of the 1978 Dodge Colt upon N.C.G.S. Section 1C–1601(d) which provides:

(d) Recent purchases. The exemptions provided in subdivisions (2), (3), (4) and (5) of subsection (a) of this section are inapplicable with respect to tangible personal property purchased by the debtor less than 90 days preceding the initiation of judgment collection proceedings or the filing of a petition for bankruptcy.

Section 1C–1601(d) is a part of New Chapter 1C, Article 16 of the North Carolina General Statutes which became effective on January 1, 1982. It is North Carolina's "opt-out" of the federal exemption scheme of Section 522(d) of the Bankruptcy Code.

The Bankruptcy Code contains no provision comparable to Section 1C–1601(d). Said section when read as written without consideration of its legislative history and its intent and purpose, leads to discriminatory and ridiculous results. Harsh results are inevitable under the facts of this and similar cases. Such a reading would require a debtor to empty his refrigerator, clean out his pantry, and otherwise turn over to the trustee every item of tangible personal property he has purchased within 90 days of his petition. Also a debtor who in good faith sold his home at market value and invested an amount not exceeding his allowable exemption, in a substitute home (a mobile home) within 90 days, would be denied his exemption therein, to which he would have otherwise been entitled.

The purpose behind Section 1C–1601(d) was to prevent insolvency or bankruptcy planning whereby a debtor would convert non-exempt assets into exempt assets, or incur dischargeable obligations in exchange for assets which could then be claimed exempt, in certain instances, in connection with which the debtor could even avoid otherwise valid liens under the provisions of Section 522(f) of the Code. For

example, the debtor could borrow money and give as security therefor his household goods, and then invest the same in other exemptable property, and proceed to lien avoidance under 522(f), with regard to his exemptable household goods. The legislative history indicates a legislative intent to prevent the use of credit cards or other unsecured debt (and as indicated above secured debt) to acquire exemptable personal property within 90 days, thereby denying the debtor the ability to augment his exemptions.

The transfer or conversion of non-exempt property into exempt property in contemplation of bankruptcy is a fraudulent conveyance in this Circuit, and should not be permitted, and this also seems to be one of the purposes and intents behind the legislation here involved.

 The transfer of exemptable assets into other exemptable assets, without intent to hinder, delay or defraud, and which in fact does not hinder, delay or defraud, and further which does not augment exemptions of the debtor certainly were not intended by the legislature to be excluded by Section 1C–1601(d). After applying this threefold test fully, the section makes sense, and any other interpretation or result would be arbitrary and capricious.

In this case, if the debtor had obtained the additional $200.00 cash by loan or other dischargeable obligation, he would have thereby augmented his exemptable assets and would lose the entire exemptable $1,700.00 asset to the trustee or creditor as the case may be.

This Court does not feel that the facts of the case at bar offend the spirit of Section 1C–1601(d). Though Section 1C–1601(d) is written as a purely objective test of whether tangible personal property is exemptable, its apparent purpose is to prevent "bankruptcy planning" which involves converting non-exempt assets into exempt assets on the eve of bankruptcy. The facts of the case at bar do not indicate such an attempt by the debtors. Rather, the debtors acquired otherwise exemptable assets with exemptable assets and without gaining any

advantage over their creditors. This Court feels that Section 1C–1601(d) was not created to preclude the exemption of tangible personal property purchased in the normal course of events during the 90-day period stated therein which does not have the effect of increasing available exemptions, and is not occasioned by his intent to, and which does not hinder, delay or defraud creditors.

BASED UPON THE FOREGOING, IT IS ORDERED, ADJUDGED AND DECREED that the trustee's Application for Turnover filed herein on November 5, 1982, be, and the same hereby is, DENIED, and the debtors' exemption in said property is ALLOWED.