**In the Matter of Ralph & Betty RUSSELL, Debtors.**

**Chris LARIMORE, Trustee, Plaintiff,**

v.

**UNITED STATES of America and Ralph & Betty Russell, Defendants.**

Bankruptcy No. 82–170.
Adv. No. 83–320.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 14, 1983.

George T. Rita, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for U.S.A.

Douglas A. Wallace, Bradenton, Fla., for plaintiff.

Don Stichter, Stichter & Riedel, P.A., Tampa, Fla., for debtors.

MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the immediate matter under consideration is a Motion for Summary Judgment filed by Chris C. Larimore, the Chapter 7 Trustee and Plaintiff in the above-styled adversary proceeding. The action was commenced by a Complaint for Turnover filed by the Trustee against the United States of America (IRS) and Ralph C. Russell and Betty J. Russell, the Chapter 7 Debtors. The Trustee seeks the entry of a judgment in his favor in the amount of $10,162.56 which represents a refund to the Debtors from the IRS in the amount of $8,581.29 plus interest of $1,581.27.

The undisputed facts which are relevant to the resolution of this controversy may be briefly summarized as follows:

On or about January 9, 1982, the Debtors paid to the IRS the sum of $42,000 as payment toward their estimated tax liability for the 1981 tax year, despite the fact that neither their 1981 tax return had been prepared nor their 1981 tax liability determined. On February 2, 1982, the Debtors filed a Voluntary Petition for Relief pursuant to Chapter 7 of the Bankruptcy Code. On October 15, 1982, the Debtors filed their 1981 individual tax return to which they attached a letter addressed to the IRS. The letter, which was dated October 14, 1982 and signed by Ralph C. Russell, advised the IRS that the Debtors had filed a Petition for Relief in the Bankruptcy Court in and for the Middle District of Florida, Tampa Division. The Debtors provided the IRS with the bankruptcy case number and the name of the Chapter 7 trustee. In addition, the Debtors instructed the IRS to apply the $42,000 remittance of January, 1982 as follows:

At this time, early January, we also sent to you the amount of $42,000 as payment on any additional 1981 taxes we owed as well as any balance not consumed by 1981 to be applied as an estimate for 1982 tax. We had income of $100,000 in January, 1982, on which no taxes were withheld. Therefore, please note that an overpayment of approximately $17,000 is left from our payments and this is to be credited to any taxes due on the income we had received prior to our bankruptcy filing on February 2, 1982.

On December 3, 1982, counsel for the Trustee made a written demand on the IRS for a refund of the overpayment and on March 25, 1983, filed this adversary proceeding against the Debtors and IRS for turnover of property of the Chapter 7 estate. On April 4, 1983, the Cincinnati, Ohio IRS center issued a refund check in the amount of $10,162.56 (principal plus interest) to Ralph C. Russell and Betty J. Russell, which check was received and cashed by the Debtors. On July 22, 1983 the Trus-

tee filed this Motion for Summary Judgment seeking judgment against the Debtors and the IRS pursuant to Code §§ 521 and 542 in an amount equal to the refund plus interest and court costs.

It should be noted that there is disparity between the amount that the Debtors, on October 15, 1982, believed to represent the overpayment to the IRS ($17,049.28) and the actual amount of the overpayment ($8,581.29). It appears that the IRS recalculated the tax liability for 1981 and thus, the actual overpayment was less than the Debtors had originally anticipated.

All parties agree that there are no issues of material fact and that this cause may be resolved as a matter of law. The IRS contends, however, that the complaint should be dismissed as to the IRS because the IRS paid the refund over to the Debtors without knowledge of the pending bankruptcy. In support of its position, the Government filed the affidavit of one Albert Roth, Chief, Special Procedures Staff of the IRS, Cleveland, Ohio, who states that neither the District Director of Internal Revenue, Cleveland nor the Cincinnati IRS Center received notice of the first meeting of creditors, Treasury Form 4488, any order of this Court directing turnover of the tax refund, or a demand from the trustee to turnover the 1981 tax refund.

Bankruptcy Code § 542 provides in pertinent part:

§ 542. Turnover of property to the estate.

"(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, *shall deliver* to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

(c) Except as provided in section 362(a)(7) of this title, an entity that has *neither actual notice nor actual knowledge* of the

commencement of the case concerning the debtor may transfer property of the estate or pay a debt owing to the debtor, in good faith and other than in the manner specified in subsection (d) of this section, to an entity making such transfer or payment as if the case under this title concerning the debtor had not been commenced."

11 U.S.C. § 542(a) and (c).

Thus, it is clear that an entity (which term includes a governmental unit pursuant to § 101(4)) in control of property that the Trustee may use, shall deliver to the trustee and account for such property, *unless* the property is of inconsequential value to the estate *or* the entity transfers the property to someone other than the trustee, without actual notice *or knowledge* of the bankruptcy. In this case, the fact that the IRS did not receive formal notification from this Court regarding the pendency of the bankruptcy in no way nullifies the effect of the Debtor's letter of October 15, 1982 in which he informed the IRS of the personal bankruptcy. Clearly, the Government was effectively put on notice of the pendency of this case several months prior to April 12, 1983, the date on which the IRS returned the overpayment to the Debtors.

The Debtors contend that the overpayment to the IRS represents taxes which, although unascertained in amount are attributable to income which was earned prepetition. Therefore, it is the Debtors' position that the monies are properly due the IRS and not property of the estate to be turned over to the Trustee.

It is the opinion of this Court, contrary to the theory advanced by the Debtors, that the Debtors paid $42,000 to the IRS on January 9, 1982 of which $33,418.71 was applied by the IRS to the Debtors' tax liability for 1981. Upon the Debtors' instruction, the remainder was to be "credited to any taxes due" on income which was generated by the Debtors prior to their petition in bankruptcy. At the time of the payment, however, there were no taxes due for the 1982 taxable year. Thus, the practical effect of the early, voluntary payment by the Debtors was to place into escrow an amount of money which could be applied to a tax liability, if any, at some date in the future. There is no doubt, that the $8,581.71 overpayment properly belonged to the Debtors on the date of filing and was merely on deposit with the IRS. The advance payment earned substantial interest, was returned to the Debtors during the pendency of this case, and appears to be little different than an amount held on deposit by a bank.

The Court is satisfied that the IRS, with actual knowledge of the pendency of this case, wrongfully turned over to the Debtors property of the estate in contravention of Bankruptcy Code § 542. In addition, the Debtors who refuse to surrender the amount of $8,581.71 plus interest which was returned to them by the IRS on April 4, 1983 are in violation of Bankruptcy Code § 521, subsections (2) and (3), which require that the Debtor both cooperate with the Trustee and surrender to the Trustee all property of the estate.

A separate final judgment will be entered in accordance with the foregoing.