In the Matter of FULGHAM ENTER-PRISES, INC., Debtor.

Bankruptcy No. 83–00657.

United States Bankruptcy Court, E.D. Michigan, N.D.

March 12, 1984.

MEMORANDUM OPINION AND ORDER

STANLEY B. BERNSTEIN, Bankruptcy Judge.

ISSUE: DOES RULE 5002 PROHIBIT THE APPOINTMENT OF A LAW FIRM AS COUNSEL TO THE INTERIM CHAPTER 7 TRUSTEE WHEN A MEMBER OF THAT FIRM SERVED AS A FORMER JUDICIAL COLLEAGUE WITH THE APPOINTING BANKRUPTCY JUDGE PRIOR TO THE FILING OF THE BANKRUPTCY PETITION?

*Introduction:*

Among the comprehensive set of Rules of Bankruptcy Procedure which became effective on August 1, 1983, no rule has been greeted with more consternation than Rule 5002, the rule on prohibited appointments. Defining the scope of the rule has led to madly ingenious exercises in construction worthy of Professor Kingsfield in *The Paper Chase,* whether at bankruptcy seminars for judges or at meetings of law firm recruitment committees. Perhaps no topic is so sensitive as appointment of counsel and other professional persons in bankruptcy cases, especially when the appointee is a former judicial colleague. The Advisory Committee's notes offer no assistance in construing the rule on this issue.

Let us first consider the transactional history of this case. On December 15, 1983, an involuntary petition was filed by a creditor of Fulgham Enterprises, Inc., a Michigan corporation. On January 19, 1984, the debtor joined with the petitioning creditors in appointing Frank Vaydik as interim Chapter 7 trustee and then consented to the order of relief. The parties expressed their joint concern that the assets of the estate, consisting primarily of "jewelry and other related goods" be liquidated promptly and effectively by an experienced trustee. This Court entered the consent order of relief and appointed Mr. Vaydik as the interim trustee.

On March 1, 1984, the trustee filed an application with this Court for the appointment of counsel; the attorney named in the application is an associate, Daniel S. Opperman, in the Saginaw and Bay City law firm of Braun, Kendrick, Finkbeiner, Schafer and Murphy, P.C. On December 1, 1983, Harvey Walker, Esq., joined that law firm.

For a six-year term ending on October 27, 1983, Harvey Walker served as a part-time bankruptcy judge for the Eastern District of Michigan. He administered the docket of the Northern Division—his regular place of holding Court was Bay City. The Bay City Administrative Unit services the counties comprising the northern and eastern half of the lower peninsula of Michigan. During his tenure in office, four full-time judges administered the dockets of the Southern Division—three sitting in Detroit and one in Flint. From November 17, 1983 through October 27, 1983, I administered the Flint docket. Upon rare occasion, the judges of the Flint and Bay City dockets transferred cases between dockets when recusal of one of the judges was mandatory or proper.

Upon Harvey Walker's retirement, the Detroit judges of the bankruptcy and district courts permitted me to add the Bay City docket to my Flint docket on the condition that I administer the Bay City docket in Bay City. On November 18, 1983, I was invited to add one-third of the Detroit docket to my pre-existing duties when the Honorable George E. Woods was transferred from the bankruptcy department or division of the United States District Court for the Eastern District of Michigan to the other, less specialized division, of the Court (the Real Court) by order of the President and advice and consent of the Senate. Those triple duties were supposed to be short-lived—it is now mid-March and no successor to Flint-Bay City has been appointed. Rumor has it that when I stop publishing opinions, I will be relieved of circuit-riding duties.

The question then becomes: Was Harvey Walker "so connected" with a judge of the Court that his or his firm's appointment as counsel or a professional person in a case would be "improper" under Rule 5002?

*Analysis:*

The entire text of Rule 5002 is:

No person may be appointed as a trustee or examiner or be employed as an attorney, accountant, appraiser, auctioneer, or other professional person pursuant to § 327 or § 1103 of the Code if (1) the person is a relative of any judge of the court making the appointment or approving the employment or (2) the person is or has been so connected with any judge of the court making the appointment or approving the employment as to render such appointment or employment improper. Whenever under this rule a person is ineligible for appointment or employment, the person's firm, partnership, corporation, or any other form of business association or relationship, and all members, associates and professional employees thereof are also ineligible for appointment or employment.

We begin with the salient fact that this case was filed after Harvey Walker resigned from the Bench. Thus, he never had any connection with the case.

We then have to consider his "connection" with the judge making the appointment. We did not share offices in the same building, indeed, our offices were 50 miles apart. We did, however, attend meetings of the five judges for eleven months to discuss common administrative matters; we

always seemed to be considering the adoption of local rules. These meetings were generally held every six weeks or so, and lasted about two to three hours. Due to differences in age and distances in miles, Harvey Walker and I did not meet socially except perhaps at a conference or seminar. Occasionally, we would joke about his rulings against me when I had appeared before him in two cases as a practitioner. On the whole, our professional relationship was cordial, born of mutual respect, but hardly "long, close and continuing."

For guidance in reaching this decision, Ethics Opinion No. 70 to the Code of Judicial Conduct is most closely on point. It deals with recusals when a former judicial colleague appears as counsel for a party in interest. The Committee adopted a very pragmatic approach to this question, and adopted as a guideline whether the relationship between the sitting and former judges was "so long, close, and continuing that the impartiality of the sitting judge might reasonably be questioned" were he or she not to enter an order of recusal. Ultimately, this type of determination is informed by a sensitive concern for public confidence in the judiciary. The test is subjective: Will the creditors, and the public generally, reasonably question this Court's impartiality? Under these disclosed circumstances, I am confident that my impartiality will not reasonably be questioned.

That same concern must also, however, pay due deference to the choice of counsel by the applicant. In this District, the District Court has stressed the importance of respecting an applicant's choice, even if the bankruptcy judge were committed to breaking any "bankruptcy ring" by appointing attorneys drawn from non-bankruptcy firms. *See In re Allard,* 23 B.R.Rptr. 517, (E.D.Mich.1982).

My present colleagues in the Eastern District of Michigan share this construction of Rule 5002 and have adopted the following joint resolution:

> The Bankruptcy Judges of the Eastern District of Michigan hereby jointly resolve that Rule 5002 does not prohibit the appointment of a former bankruptcy judge of this Court (or a member of his or her law firm) as a trustee, examiner, counsel, or other professional person in any case filed after he or she vacated judicial office. A sitting judge may, however, deny such an appointment if (i) his or her relationship with the former judge has been so long, close, and continuing that the impartiality of the sitting judge might reasonably be questioned were the appointment made, and (ii) recusal would be improper.

In the circumstances of this case, the appointment of the Braun firm would not be improper. There is not a sufficient connection between the Braun firm, Harvey Walker, and this judge to deny the applicant his choice of counsel.

The application is GRANTED.

IT IS SO ORDERED.