**In re HEPPELLE (two cases).**

**Nos. 40737, 40756.**

District Court, D. Massachusetts.

Nov. 4, 1932.

John P. Kirby, of Springfield, Mass., for bankrupt.

James F. Egan, of Springfield, Mass., for trustee.

**BREWSTER, District Judge.**

In the above-entitled matters, the bankrupt Delia Heppelle has been ordered by the court to deliver to the trustee a Chevrolet motortruck and to pay to him the sum of $1,500, and the bankrupt Joseph Heppelle has been ordered to pay to the trustee $3,000, representing the value of certain building materials not specifically described and certain credits and moneys found to be due his estate in bankruptcy. In so far as the turnover order related to specific property, it has been complied with. The cash payments have not been made, and in these proceedings the trustee moves to have the bankrupts committed for contempt because of the failure to comply with the order respecting the payments of money. The matters now come before the court on the referee's certificate recommending that the bankrupts be punished for their contumacy.

I am obliged to accept as true, notwithstanding the protests of the bankrupts to the contrary, that they were in possession of cash and merchandise to the aggregate value of $4,500 which belonged to the bankrupt estate. The turnover order of the referee, confirmed by the court, is not now open to at-

664

tack. Oriel v. Russell, 278 U. S. 358, 49 S. Ct. 173, 73 L. Ed. 419.

 Assuming, therefore, that on October 1, 1930, the date of the turnover order, the bankrupts had in their possession lumber and cash to the value of $4,500, the question then is: Are they still in possession of the merchandise and cash so that they can now comply with the order to pay the money? Or, to adopt the language frequently found in the decisions, has there been such a change of situation that the bankrupts are no longer able to comply with the turnover order?

It is to be noted that so far as the order calls for the delivery of property capable of identification, it has been complied with. The bankrupts have delivered to the trustee the motortruck. Their failure relates to the payment, not of identified funds but of sums of money which were not capable of being determined with exactness and, therefore, had to be more or less arbitrarily fixed.

At the time the bankruptcy proceedings were instituted, the bankrupts moved from this state to Meriden, Conn., and the evidence warrants the inference that, in 1930, they embarked upon a real estate venture in which cash and building materials may well have been employed. This real estate is now owned by a third party whose title cannot be disturbed in proceedings to which the grantee is not a party.

I find that any money which the bankrupts derived from these transactions and any other income which they have received since the order has been entered has been used up in ordinary living expenses and in meeting expenses due to illness and death in the family, to litigation and other extraordinary demands which need not be recited here.

It further appeared in evidence that while the motion for contempt was pending the bankrupts made an earnest effort to raise funds, with the result that about $700 was turned over to bankrupts' attorney to be applied in part performance of the order. This sum represented the total result of their endeavors. It was refused by the trustee and returned to the bankrupts. They have accounted for their failure to now produce this amount. I am not satisfied that the disobedience in these cases was willful.

From all the evidence before me I find that neither of the bankrupts are able to pay the sums ordered to be paid by them respectively and that any order of commitment would be futile.

The power of this court to punish for contempt is drastic and far-reaching and ought to be exercised with unusual caution where the failure relates to the payment of money not particularly identified, the amount of which was to some extent, at least, a matter of speculation. The court ought also to give consideration to the fact that these orders to pay money were not entered until nearly two and one-half years after the bankruptcy proceedings had begun.

When the inability of the bankrupts to comply is shown, the courts have consistently refused to punish for contempt. In re McNaught (D. C.) 225 F. 511; Epstein v. Steinfeld (C. C. A.) 210 F. 236; American Trust Co. of Pittsburgh v. Wallis (C. C. A.) 126 F. 464; In re Holden (C. C. A.) 203 F. 229; In re Cole (C. C. A.) 163 F. 180, 23 L. R. A. (N. S.) 255; In re Frank (C. C. A.) 182 F. 794; Stuart v. Reynolds (C. C. A.) 204 F. 709; In re Haring (D. C.) 193 F. 168; In re Soloway & Katz (D. C.) 196 F. 132; In re Davison (D. C.) 143 F. 673.

To commit to prison a bankrupt who is unable to comply with the orders of the court savors strongly of imprisonment for debt. I take it that the provisions of section 41 of the Bankruptcy Act (11 USCA § 69) contemplate that the power to commit should be exercised to compel obedience rather than to punish for disobedience, except of course in cases where the disobedience amounts to contumacy.

In each of the above-entitled proceedings the motion to commit for contempt is denied.