In re Bill F. RIDING, Korine Clements Riding, Debtors.

Bankruptcy No. 84A–01327.

United States Bankruptcy Court, D. Utah, C.D.

Dec. 5, 1984.

Steven T. Waterman, Watkiss & Campbell, Salt Lake City, Utah, for The State Bank.

Richard Calder, Salt Lake City, Utah, for debtors.

## MEMORANDUM OPINION AND ORDER

JOHN H. ALLEN, Bankruptcy Judge.

### CASE SUMMARY

■ This matter concerns the procedural aspects of litigating turnover of property of the debtor's estate under 11 U.S.C. § 542.[1] The Court is called upon to decide whether a Chapter 13 debtor may commence a turnover proceeding by motion. This opinion is written to encourage and facilitate a uniform practice under the Bankruptcy Rules. The Court holds that a proceeding for turnover of property must be instituted by complaint in accordance with Part VII of the Bankruptcy Rules.

### BACKGROUND

On May 15, 1984, the debtors filed a joint petition for relief under Chapter 13 of the Bankruptcy Code. On July 17, 1984, the debtors filed a motion to compel The State Bank, creditor with a secured claim, to turn over a 1978 Chevrolet pickup truck, which had been repossessed following default and prior to the filing of the Chapter 13 petition. A copy of the motion, together with a notice of the hearing thereon, set for July 26, 1984, was mailed to the Chapter 13 trustee and the bank on July 17, 1984. At the hearing, neither the trustee nor the bank appeared, and the Court entered an order granting the debtors the relief sought.[2] Later that day, The State Bank filed a motion for relief from the order, asking that it be vacated upon the grounds that (1) a turnover proceeding must be commenced by the filing of a complaint and not by motion; (2) notice was inadequate, since the bank, an out-of-state resident, received less than 7 days notice by mail; and (3) notice was inadequate because it did not describe with particularity the nature of the hearing. The Court heard oral argument on the bank's motion and the matter was taken under advisement.

### DISCUSSION

#### The Relationship of Sections 541, 542, and 363

■ A joint case under Chapter 13 is commenced by the filing of a petition by an individual and such individual's spouse. 11 U.S.C. § 302(a). The filing of a Chapter 13 petition creates an estate which includes all legal or equitable interests of the debtor in property as of the commencement of the case, as well as property and earnings acquired after the commencement of the case but before the case is closed, converted, or dismissed. 11 U.S.C. §§ 541, 1306. Property of the estate, as defined by Section 541, encompasses more than just property in the debtor's possession at the time of filing the bankruptcy petition. *United States v. Whiting Pools*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 67–68 (1977), 1978 U.S.Code Cong. & Admin. News, pp. 5787, 6323–24; S.Rep. No. 95–989, 95th Cong., 2d Sess. 82–3 (1978), 1978 U.S.Code Cong. & Admin.News, pp. 5868–69. *See In re Independent Clearing House Company*, 41 B.R. 985, 998, 12 B.C.D. 44, 11 C.B.C.2d 196 (Bkrtcy.D.Utah

---

**1.** Section 542(a) provides: Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

**2.** Local Rule 5(d) provides in pertinent part as follows: "[F]ailure of counsel to be present at the hearing noticed for any motion, or to attend at the time to which [the] hearing is continued, shall be deemed ... a consent to the sustaining of the pleading or objection or the granting of the motion if such pleading or objection or the granting of the motion if such counsel represents the responding party."

1984). Section 541(a)(1) defines property of the estate as *all* legal and equitable interests held by a debtor. *In re Southern Equipment Sales, Co., Inc.,* 24 B.R. 788, 792 (Bkrtcy.D.N.J.1982).

■ The debtors' interest in the 1978 Chevrolet pickup truck after its repossession and prior to its sale is that of a right of redemption under Section 9–506 of the Uniform Commercial Code. Utah Code Ann. § 70A–9–506 (Repl.1980). *See In re Anderson,* 29 B.R. 563, 564 (Bkrtcy.E.D. Va.1983). Under Section 9–506, the debtors have the right to redeem collateral that has been repossessed, provided (1) the creditor has not disposed of the collateral or contracted for its disposition under Section 9–504; (2) the creditor's right to retain the collateral has not become fixed under Section 9–505(2); (3) the parties have not otherwise agreed in writing after the default; and (4) the debtors tender fulfillment of the secured obligation, plus the expenses incurred in repossessing the collateral. Utah Code Ann. § 70A–9–506, *supra.* A debtor's right to redeem is property of the estate. *In re King,* 14 B.R. 316, 317–18, 7 B.C.D. 530 (Bkrtcy.M.D.Tenn.1981); *In re Brickel,* 11 B.R. 353, 355, 7 B.C.D. 957 (Bkrtcy.D.Me.1981); *In re Gunder,* 8 B.R. 390, 393 (Bkrtcy.S.D.Ohio 1980); *In re Williams,* 6 B.R. 789, 6 B.C.D. 1219 (Bkrtcy.E. D.Mich.1980). Furthermore, Section 1322(b)(3) permits a Chapter 13 debtor to cure any default, and thereby negates the effect of acceleration clauses. *In re Taddeo,* 685 F.2d 24 (2d Cir.1982). *See In re Anderson, supra,* 29 B.R. at 565; *In re*

*Kokkinis,* 22 B.R. 353, 355 (Bkrtcy.N.D.Ill., 1982).

■ A turnover proceeding "is essentially a proceeding for restitution." *Maggio v. Zeitz,* 333 U.S. 56, 63, 68 S.Ct. 401, 405, 92 L.Ed. 476 (1948). The Bankruptcy Court can order the turnover of property in which the debtor holds only a contingent possessory right, such as a right of redemption or the right to cure a default, as long as adequate protection can be afforded to the secured party. *United States v. Whiting Pools, Inc.,* 674 F.2d 144, 155–56 (2d Cir. 1982), *aff'd* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515, *supra; Georgia Pacific Corp. v. Sigma Service Corp.,* 712 F.2d 962, 966–67 (5th Cir.1983); *In re Sunrise Equipment and Development Corp.,* 24 B.R. 26, 27 (Bkrtcy.D.Ariz.1982); *In re Alpa Corp.,* 11 B.R. 281, 289–90, 7 B.C.D. 791 (Bkrtcy. D.Utah 1981); *Matter of Day Resource & Development Co.,* 21 B.R. 176, 177–78, 9 B.C.D. 569 (Bkrtcy.D.Idaho 1982); *In re King, supra,* 14 B.R. at 317–18; *Matter of Troy Industrial Catering Service,* 2 B.R. 521, 5 B.C.D. 1243 (Bkrtcy.E.D.Mich.1980). *See In re Purbeck & Associates, Ltd.,* 12 B.R. 406, 408 (Bkrtcy.D.Conn.1981).

■ Property for which turnover may be compelled under Section 542 is simply the kind of property which the debtor may "use, sell or lease" under Section 363.[3] Once the property is found to be of a type which the debtor could "use, sell or lease," turnover is appropriate under Section 542 subject only to the conditions imposed by Section 363. *Matter of Cudaback,* 22 B.R. 914, 917, 9 B.C.D. 695, 7 C.B.C.2d 204 (Bkrtcy.D.Neb.1982).[4] For example, if a

---

3. Section 363(e) provides: Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. In any hearing under this section, the trustee has the burden of proof on the issue of adequate protection.

4. Counsel for the debtors does not contend that The State Bank is a "custodian" within the meaning of Sections 543 and 101(10) of the Bankruptcy Code. A secured creditor that has

repossessed its collateral is not a custodian within the meaning of 11 U.S.C. § 101(10). *Flournoy v. City Finance of Columbus, Inc.,* 679 F.2d 821, 824 (11th Cir.1982). *See Matter of Pride Foods, Inc.,* 22 B.R. 356, 358, 9 B.C.D. 480, 6 C.B.C.2d 1412 (Bkrtcy.D.Neb.1982); *In re Lewis,* 12 B.R. 106, 108–09, 7 B.C.D. 1023, 4 C.B.C.2d 1085 (Bkrtcy.M.D.Ga.1981). *Contra, In re Brickel,* 11 B.R. 353, 7 B.C.D. 957, 4 C.B.C.2d 561 (Bkrtcy.D.Me.1981); *Matter of Williams,* 6 B.R. 789, 6 B.C.D. 1219, 3 C.B.C.2d 84 (Bkrtcy.E.D. Mich.1980). Therefore, this proceeding is governed by Section 542 of the Code and Section 543 is inapplicable.

request is made for adequate protection by a secured creditor with an interest in the property and the debtor is unable to provide adequate protection, the requirement of Section 363(e) cannot be met and turnover will not be ordered. *Id.*

Alternate means are available to adequately protect the secured creditor's interest during the pendency of the case, thereby insuring that the creditor "receives in value essentially what he bargained for." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 339 (1977), 1978 U.S.Cong. & Admin.News, p. 6295. *See In re Sweetwater,* 40 B.R. 733, 735, 11 B.C.D. 1220 (Bkrtcy.D.Utah 1984); *In re South Village, Inc.,* 25 B.R. 987, 990–94, 9 B.C.D. 1332, 8 C.B.C.2d 42 (Bkrtcy.D.Utah 1982); *In re Alyucan Interstate Corp.,* 12 B.R. 803, 806–08, 7 B.C.D. 1123, 4 C.B.C.2d 1066 (Bkrtcy.D. Utah 1981). The first means suggested by Section 361 is periodic cash payments to the creditor to the extent that there will be a decrease in its interest in the collateral. 11 U.S.C. § 361(1). The second method is to provide an additional or replacement lien to the extent that the automatic stay or use of the collateral results in a decrease in the value of the secured creditor's interest. 11 U.S.C. § 361(2). The third alternative is "such other relief" as the Court may fashion that will provide the secured creditor with adequate protection. 11 U.S.C. § 361(3).

One commentator referred to the relationship between Sections 363 and 542 as follows:

> The inclusion of section 363 in section 542 assures that a turnover order may not issue in total disregard of the creditor's interest. Rather, sections 542 and 363 should be read together to form the general rule: "[I]f there is any value or

benefit to the estate in receiving property, turnover must be made if the interest of the creditor in the property to be turned over is adequately protected." D. Nowak, "Turnover Following Prepetition Levy of Distraint Under Bankruptcy Code § 542," 55 Am.Bankr.L.J. 313, 335–36 (1981). *See also* Weisman, "The Legal Standard for A § 542(a) Turnover," 1983 Ann.Surv.Bankr.L. 265, 281–84.

It is in the light of these substantive principles of turnover that the Court now turns to the procedural requirements.

## *Procedural Requirements for Turnover*

For many years, the bankruptcy bar in this district was a rather small group of lawyers. The same attorneys would appear before the Court in varying capacities in most substantial cases. There is a marked difference, however, in the practice of bankruptcy law since enactment of the Code. The pervasive jurisdiction of the Bankruptcy Court, even as modified by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, 98 Stat. 333 (July 10, 1984), has required that a wider variety of matters be litigated before bankruptcy judges. The inevitable result is that the practice of bankruptcy law has been diffused and will continue to be diffused among many more members of the bar. This is to be encouraged. *Cf.* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 95 (1977), 1978 U.S.Code Cong. & Admin. News p. 6056 (1978). But before such attorneys can competently represent parties in this Court, they must understand the framework of statutes and rules within which the nation's bankruptcy system operates. This is an educational task of no small proportion.[5]

---

**5.** The Court and the bar have grappled with numerous procedural and administrative problems since enactment of the Bankruptcy Code and, more recently, with the promulgation of new Bankruptcy Rules. A few examples will suffice. First, during the period in which the Emergency Rule governed, bankruptcy proceedings were subject to *de novo* review on appeal. Emergency Rule § (e)(2)(B). Following enactment of the new Bankruptcy Rules on which

became effective August 1, 1983, bankruptcy appeals were governed by a "clearly erroneous" standard of review as to factual determinations. Bankruptcy Rule 8013. Until the Emergency Rule was superseded by passage of the Bankruptcy Amendments and Federal Judgeship Act of 1984, a controversy existed as to which rule governed the standard of appellate review, the Emergency Rule or Bankruptcy Rule 8013. *See In re Morrissey,* 717 F.2d 100 (3d Cir.1983); *In re*

*Summary Turnover and Contempt Procedure Under the 1898 Bankruptcy Act.*

Under the 1898 Bankruptcy Act, and prior to promulgation of the 1973 Rules of Bankruptcy Procedure, there were two procedural methods to determine whether property of the debtor's estate was wrongfully in the possession of a third party. A petition for "turnover" was one, and a plenary suit was the other. *See In re Tech. Consolidated, Inc.,* 329 F.Supp. 27, 31 (D.N.H.1971). The procedure for exercising summary turnover jurisdiction was by written petition, setting forth with reasonable particularity the trustee's claims and demands, with notice to the respondent by an order to show cause. *In re Monroe,* 48 F.Supp. 932 (E.D.Mich.1943). *See Marshall v. Knox,* 83 U.S. (16 Wall.) 551, 21 L.Ed. 481 (1873) (1867 Act); *Smith v. Mason,* 81 U.S. (14 Wall.) 419, 20 L.Ed. 748 (1872) (1867 Act); *Louisville Trust Co. v. Comingor,* 184 U.S. 18, 22 S.Ct. 293, 46 L.Ed. 413 (1902); *Mueller v. Nugent,* 184 U.S. 1, 22 S.Ct. 269, 46 L.Ed. 405 (1902); *Taubel-Scott-Kitzmiller Co., Inc. v. Fox,* 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770 (1924); *State of Ohio v. Madeline Marie Nursing Homes,* 694 F.2d 449 (6th Cir. 1982); *Matter of J.S. Mobile Homes,* 434 F.2d 1294 (9th Cir.1970); *Frasch v. Wilson,* 413 F.2d 69 (9th Cir.1969); *In re Steinreich Associates,* 83 F.2d 254 (2d Cir.1936), *cert. denied, Magurno v. O'Neil,* 299 U.S. 571, 57 S.Ct. 35, 81 L.Ed. 421 (1936); *Merritt v. Long,* 93 F.2d 257 (9th Cir.1937); *In re Maki,* 14 F.2d 626 (W.D.Mich.1925), *aff'd,* 18 F.2d 89 (6th Cir.1927); *In re Uittenbogard,* 295 Fed. 778 (8th Cir.1924); *In re Midtown Contracting Co.,* 243 Fed. 56 (2d Cir.), *cert. denied, Wilds v. Department of Education,* 245 U.S. 654, 38 S.Ct. 12, 62 L.Ed. 532 (1917); *In re Frank,* 182 Fed. 794 (8th Cir.1910); *In re Hecox,* 164 Fed. 823 (8th Cir.1908); *In re Cole,* 163 Fed. 180 (1st Cir.1908); *Sinsheimer v. Simonson,* 107 Fed. 898 (6th Cir.1901), *aff'd Louisville Trust Co. v. Comingor, supra,* 184 U.S. at 18, 22 S.Ct. at 293, 46 L.Ed. 413 (1902); *Boyd v. Glucklich,* 116 Fed. 131 (8th Cir. 1902); *Bear v. Chase* 99 Fed. 920 (4th Cir.1900); *In re Buchwald,* 133 F.Supp. 880 (S.D.N.Y.1955); *In re Rogers,* 51 F.Supp. 930 (S.D.N.Y.1942); *In re R. Carrillo & Co.,* 20 F.Supp. 6 (S.D.N.Y.1937); *In re Atwater,* 227 Fed. 511 (S.D.N.Y. 1915); *In re Schimmel,* 203 Fed. 181 (E.D. Pa.1913); *In re C.M. Burkhalter & Co.,* 179 Fed. 403 (N.D.Ala.1910); *In re Ruos,* 164 Fed. 749 (E.D.Pa.1908); *In re Scherber,* 131 Fed. 121 (D.Mass.1904). The sum-

---

*Philadelphia Consumer Discount Co.,* 37 B.R. 946, 949 n. 8 (E.D.Pa.1984); *Davis v. Lewis,* 36 B.R. 88, 90 (E.D.Ark.1984); *In re Tarnow,* 35 B.R. 1014, 1015 (N.D.Ind.1983); *In re Romeo J. Roy, Inc.,* 32 B.R. 240, 243–44, 10 B.C.D. 1253, 1255–56 (Bkrtcy.D.Me.1983), *aff'd* 32 B.R. 1008, 10 B.C.D. 1392 (D.Me.1983).

Second, relief from the stay litigation, which was formerly initiated by adversary complaint, produced problems such as the propriety of filing counterclaims until the new bankruptcy rules permitted such litigation by motion. *See* Bankruptcy Rule 4001. *Cf. In re Bialac,* 694 F.2d 625, 627 (9th Cir.1982) (counterclaims which do not directly involve questions of the debtor's equity should be tried separately from the stay proceeding); *Matter of Georgia Steel, Inc.,* 19 B.R. 523, 9 B.C.D. 219 (Bkrtcy.M.D.Ga. 1982) (counterclaim involving complex litigation should be severed from request for relief from the automatic stay); *In re Born,* 10 B.R. 43, 7 B.C.D. 313 (Bkrtcy.S.D.Tex.1981) (counterclaims and affirmative defenses involving complex issues should be severed in stay litigation in order to preserve integrity of the adequate protection concept); *United Companies Finan-* *cial Corp. v. Brantley,* 6 B.R. 178, 187, 6 B.C.D. 932 (Bkrtcy.N.D.Fla.1980) (affirmative defenses or counterclaims not directly related to the specific debt should not be considered in determining whether to grant relief from the automatic stay).

Third, the new bankruptcy rules, as might have been expected, have produced a few problems of their own, one of the most significant being the controversy surrounding Rule 5002, pertaining to prohibited appointments. *See, e.g., In re Hilltop Sand & Gravel, Inc.,* 33 B.R. 839, 11 B.C.D. 3, 9 C.B.C.2d 665 (Bkrtcy.N.D. Ohio 1983), *rev'd* 35 B.R. 412, 11 B.C.D. 377 (N.D.Ohio 1983); *Matter of Fulgham Enterprises, Inc.,* 37 B.R. 577 (Bkrtcy.E.D.Mich.1984); *In re National Store Fixture Co., Inc.,* 37 B.R. 481 (Bkrtcy.W.D.Mo.1984); Vihon, "Bankruptcy Amendment," Norton Bankr.L. Advisor 1–3 (Jan. 1984); Hilderbrand, "Bankruptcy Rule 5002: A Mistake in Interpretation," Norton Bankr. L. Advisor 4–6 (July, 1984); Preliminary Draft of Proposed Amendments to Bankruptcy Rule 5002 (Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, Aug. 1984).

mary turnover procedure, as it developed by petition or motion and order to show cause, was "a judicial innovation by which the court [sought] efficiently and expeditiously to accomplish ends prescribed by the statute." *Maggio v. Zeitz, supra,* 333 U.S. at 61, 68 S.Ct. at 404. *See Matter of Cafes Internationale, Ltd.,* 13 B.R. 155, 160 (Bkrtcy.S.D.N.Y.1981). An order to show cause was "in the nature of" service of process, *see* 2 COLLIER ON BANKRUPTCY ¶ 24.39, at 796 (14th ed. 1976), and did not offend due process. *See In re Monroe, supra,* 48 F.Supp. at 932–33.

The basic concept underlying jurisdiction under the 1898 Act was possession of property. *In re Process-Manz Press, Inc.,* 369 F.2d 513, 516 (7th Cir.1966), *cert. denied, Limperis v. A.J. Armstrong Co.,* 386 U.S. 957, 87 S.Ct. 1022, 18 L.Ed.2d 104 (1967); *In re Rogers, supra,* 51 F.Supp. at 932. *See Sherr v. Sierra Trading Corp.,* 492 F.2d 971, 976 (10th Cir.1974). *Cf. American Mannex Corp. v. Huffstutler,* 329 F.2d 449, 451 n. 4 (5th Cir.1964). The bankruptcy court's summary jurisdiction was based upon either (1) actual or constructive possession of the debtor's property; (2) consent by the adverse claimant; or (3) a determination that the adverse claim was merely "colorable" and not real and substantial. *Harrison v. Chamberlin,* 271 U.S. 191, 193–94, 46 S.Ct. 467, 468–69, 70 L.Ed. 897 (1926); *Sherr v. Sierra Trading Corp., supra,* 492 F.2d at 976; *Brouner v. Seligson,* 416 F.2d 705, 706 (2d Cir.1969); *In re Madden,* 388 F.Supp. 47, 50 (D.Idaho 1975); *In re Warren,* 387 F.Supp. 1395, 1400 (S.D.Ohio 1975). Where the property in question was in the possession of an adverse claimant at the time of filing the bankruptcy petition, a turnover proceeding was not within the summary jurisdiction of the bankruptcy court. *See Phelps v. United States,* 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975); *Cline v. Kaplan,* 323 U.S. 97, 98–99, 65 S.Ct. 155, 156–157, 89 L.Ed. 97 (1944); *Steelman v. All Continent Corp.,* 301 U.S. 278, 286, 57 S.Ct. 705, 708, 81 L.Ed. 1085 (1937); *Harrison v. Chamberlain, supra,* 271 U.S. at 193–94, 46 S.Ct. at 468–69; *Jaquith v. Rowley,* 188 U.S. 620, 23 S.Ct. 369, 47 L.Ed. 620 (1903); *Louisville Trust Co. v. Comingor, supra,* 184 U.S. at 25–26, 22 S.Ct. at 296–97; *May v. Henderson,* 268 U.S. 111, 115–16, 45 S.Ct. 456, 458–59, 69 L.Ed. 870 (1925); *Taubel-Scott-Kitzmiller Co., Inc. v. Fox, supra,* 264 U.S. at 432–33, 44 S.Ct. at 398–99; *In re Contemporary Apparel, Inc.,* 488 F.2d 794 (3d Cir.1973); *Arnold v. King,* 236 F.2d 877, 880 (9th Cir.1956); *Central States Corp. v. Luther,* 215 F.2d 38, 44 (10th Cir.1954), *cert. denied,* 348 U.S. 951, 75 S.Ct. 438, 99 L.Ed. 743 (1955) *Merritt v. Long, supra,* 93 F.2d at 258; *In re Faerstein,* 58 F.2d 942, 943–44 (9th Cir.1932); *In re Italian Importing Co.,* 9 F.2d 908, 909 (7th Cir.1925); *In re Uittenbogard, supra,* 295 Fed. at 779; *Smith v. Belford,* 106 Fed. 658, 660–61 (6th Cir.1901); *In re Madden, supra,* 388 F.Supp. at 50; *In re Warren, supra,* 387 F.Supp. at 1399–1400; *In re Tech. Consolidated, Inc., supra,* 329 F.Supp. at 31–32; *In re Carrillo & Co., supra,* 20 F.Supp. at 8; *In re Looschen Piano Case Co.,* 261 Fed. 93 (D.N.J.1919); *In re Kramer,* 218 Fed. 138, 140–41 (E.D. Pa.1914); *In re Kornit Mfg. Co.,* 192 Fed. 392, 395–96 (D.N.J.1911); *In re Alphin & Lake Cotton Co.,* 131 Fed. 824 (E.D.Ark. 1904); *In re Kane,* 131 Fed. 386, 387 (N.D. N.Y.1904). Since the existence of an adverse claim to the property by the party in possession would defeat the summary jurisdiction of the bankruptcy court, a preliminary determination would be made to ascertain whether the claim of adverse ownership was bona fide, or merely colorable. *See Harris v. Avery Brundage Co.,* 305 U.S. 160, 163, 59 S.Ct. 131, 133, 83 L.Ed. 100 (1938); *Steelman v. All Continent Corp., supra,* 301 U.S. at 278, 57 S.Ct. at 705; *MacDonald v. Plymouth Trust Co.,* 286 U.S. 263, 266–67, 52 S.Ct. 505, 506–07, 76 L.Ed. 1093 (1932); *Weidhorn & Levy,* 253 U.S. 268, 271–72, 40 S.Ct. 534, 535–36, 64 L.Ed. 898 (1920); *Louisville Trust Co. v. Comingor, supra,* 184 U.S. at 18, 22 S.Ct. at 293; *Mueller v. Nugent, supra,* 184 U.S. at 15, 22 S.Ct. at 275; *Bardes v. First National Bank of Hawarden,* 178 U.S. 524, 20 S.Ct. 1000, 44 L.Ed.

1175 (1900); *Frasch v. Wilson, supra,* 413 F.2d at 72; *In re Process-Manz Press, Inc., supra,* 369 F.2d at 516; *American Mannex Corp. v. Huffstutler, supra,* 329 F.2d at 453; *Sahn v. Pagano,* 302 F.2d 629, 632 (2d Cir.) *cert. denied,* 371 U.S. 819, 83 S.Ct. 34, 9 L.Ed.2d 59 (1962); *Davidson v. Scofield,* 153 F.2d 7, 9 (10th Cir.1946); *Golin v. Florence Trading Corp.,* 128 F.2d 431, 432 (2d Cir.1942); *Chandler v. Perry,* 74 F.2d 371, 374 (5th Cir.1934); *American Finance Co. of Galveston v. Coppard,* 45 F.2d 154, 155 (5th Cir.1930); *Shortridge v. Utah Savings & Trust Co.,* 40 F.2d 328, 329 (10th Cir.1930); *In re Huntington Woodworkers, Inc.,* 15 F.2d 876, 877 (E.D.N.Y.1926), *aff'd,* 15 F.2d 877 (2d Cir.1926); *In re Yorkville Coal Co.,* 211 Fed. 619, 621–22 (2d Cir.1914); *Shea v. Lewis,* 206 Fed. 877, 881 (8th Cir.1913); *In re Lykens Hosiery Mills, Inc.,* 141 F.Supp. 891, 895 (S.D.N.Y. 1956); *In re Permanent Mortgage Co.,* 5 F.Supp. 957, 958 (S.D.N.Y.1933); *In re Paramount Fireproof Door Co.,* 43 F.2d 558, 559 (E.D.N.Y.1930); *In re Jones,* 42 F.2d 269, 270 (E.D.Tex.1930); *In re Logan,* 196 Fed. 678, 681–82 (N.D.N.Y.1912); *In re Tarbox,* 185 Fed. 985 (D.Mass.1910); *In re Hayden,* 172 Fed. 623, 624–25 (D.Mass. 1908); *In re Adams,* 130 Fed. 788, 789 (D.R.I.1904); *In re Teschmacher & Mrazay,* 127 Fed. 728, 730 (E.D.Pa.1904); *In re Tune,* 115 Fed. 906, 914 (D.Ala.1902). Summary jurisdiction was not presumed. The facts showing summary jurisdiction were required to be affirmatively alleged in the turnover petition. *Maule Industries v. Gerstel,* 232 F.2d 294, 297 (5th Cir.1956); *In re Scranton Knitting Mills, Inc.,* 14 F.Supp. 707, 708 (M.D.Pa.1936), *vacated, Reifsnyder v. B. Levy & Son,* 88 F.2d 287 (3d Cir.), *cert. denied,* 301 U.S. 696, 57 S.Ct. 926, 81 L.Ed. 1351 (1937). Mere possession of the property, without any valid claim of the title or interest, would not make one an adverse claimant, nor was possession sufficient where the claim of the party in possession was only colorable. Likewise, the mere refusal to surrender the property did not constitute an adverse claim. *See Mueller v. Nugent, supra,* 184 U.S. at 15, 22 S.Ct. at 275. "Possession,

actual or constructive, is therefore inconsequential. The important thing is the lawful, rightful character of that 'possession.'" *American Mannex Corp. v. Huffstutler, supra,* 329 F.2d at 451 n. 4. An adverse claim existed whenever the facts alleged in the turnover petition disclosed possession of the property and a legal right thereto by a party claiming title. *See In re Blum,* 202 Fed. 883, 884 (7th Cir.1913); *In re Looschen Piano Case Co., supra,* 261 Fed. at 95. In determining whether an adverse claim was substantial or merely colorable, the Supreme Court held that the test to be applied was whether the claimant's contention "discloses a contested matter of right, involving some fair doubt and reasonable room for controversy." *Harrison v. Chamberlain, supra,* 271 U.S. at 194–95, 46 S.Ct. at 468–69. As soon as a substantial adverse claim was disclosed, the bankruptcy court would proceed no further, leaving the trustee to resort to a plenary suit. *See In re Meiselman,* 105 F.2d 995, 997–98 (2d Cir.1939); *Central Republic Bank & Trust Co. v. Caldwell,* 58 F.2d 721, 730 (8th Cir.1932). Thus, under the Act, two very different types of hearings could be involved in turnover proceedings: (1) a hearing on the objection of the respondent that he is an adverse claimant not subject to the summary jurisdiction of the bankruptcy court; and (2) a hearing for summary determination of rights in the property, and whether the respondent should be ordered to turn it over under penalty of contempt if he fails to comply. J. Henderson, 5A REMINGTON ON BANKRUPTCY § 2426, at 199–200 (5th ed. 1953).

A turnover proceeding, based on a constructive possession of the property, was similar to an action *in rem. In re J.S. Mobile Homes, supra,* 434 F.2d at 1295. *See Maggio v. Zeitz, supra,* 333 U.S. at 63, 68 S.Ct. at 405. But the turnover order operated *in personam,* and failure to comply was a civil contempt. *In re Goldman,* 62 F.2d 421, 423–424 (1st Cir.1932). *See Maggio v. Zeitz, supra,* 333 U.S. at 56, 68 S.Ct. at 401; *Oriel v. Russell,* 278 U.S. 358,

362, 49 S.Ct. 173, 174, 73 L.Ed. 419 (1929); *In re Wire Corp. of America*, 131 F.Supp. 586, 588 (D.N.J.1955); *In re Shachter*, 119 Fed. 1010 (N.D.Ga.1902). *See generally*, Schwartz "Turnover and Contempt Proceedings in the Light of the History of Maggio v. Zeitz," 5 U.C.L.A.L.Rev. 75 (1958); Note, "Civil Contempt Proceedings to Enforce Turnover Order in Bankruptcy," 18 U.Cin.L.Rev. 70 (1949); McGovern, "Aspects of the Turnover Proceedings in Bankruptcy," 9·Fordham L.Rev. 316 (1940). Imprisonment of a party as a contempt sanction for failure to comply with the turnover order did not constitute imprisonment for debt, because the contemnor was not indebted to the trustee. Rather, the property was a part of the debtor's estate, which vested in the trustee by operation of law, and the purpose of the turnover order was to direct delivery of such property to the trustee. Commitment for contempt was a part of the bankruptcy court's power to compel obedience to the turnover order. *See In re Schlesinger*, 102 Fed. 117, 119 (2d Cir.1900); *In re Heppelle*, 2 F.Supp. 663 (D.Mass.1932); *In re Epstein*, 206 Fed. 568, 569–70 (E.D.Pa.1913) *aff'd*, 210 Fed. 236 (3d Cir.1914); *Cf. Cooper v. Dasher*, 290 U.S. 106, 54 S.Ct. 6, 78 L.Ed. 203 (1933).

To warrant an order to turn over property, the trustee was required to show not only that the property to be turned over was part of the debtor's estate, but that it was in the respondent's possession or under his control at the time the turnover order was entered. *In re Redbord*, 3 F.2d 793, 794 (2d Cir.1924). *See Danish v. Sofranski*, 93 F.2d 424, 426 (2d Cir.1937), *cert. denied*, 303 U.S. 641, 58 S.Ct. 610, 82 L.Ed. 1101 (1938); *In re Steinreich Associates Inc.*, *supra*, 83 F.2d at 254; *In re Brockton Ideal Shoe Co.*, 202 Fed. 199, 200 (2d Cir.1913); *Dittmar v. Michelson*, 281 Fed. 116 (3d Cir.), *cert. denied*, 260 U.S. 738, 43 S.Ct. 95, 67 L.Ed. 489 (1922); *In re Holden*, 203 Fed. 229, 231–32 (6th Cir.), *cert. denied*, *Holden v. Haring*, 229 U.S. 621, 33 S.Ct. 1049, 57 L.Ed. 1355 (1913); *Sinsheimer v. Simonson*, *supra*, 107 Fed. at 906–07; *In re Kirk Kabinets, Inc.*, 393

F.Supp. 798, 801 (M.D.Ga.1975); *In re Epstein*, *supra*, 206 Fed. at 569–70; *In re Guillotine Splicer Corp.*, 2 B.R. 306, 308 (Bkrtcy.E.D.N.Y.1980).

The bankruptcy court could not compel an impossibility, and a showing by the respondent that he was unable to turn over the property, either because it was not in his possession of under his control, or for any other reason, was a sufficient answer to the order to show cause. *Sinsheimer v. Simonson*, *supra*, 107 Fed. at 907. *See Maggio v. Zeitz*, *supra*, 333 U.S. at 72, 68 S.Ct. at 409; *In re Contemporary Apparel, Inc.*, *supra*, 488 F.2d at 798; *In re Brockton Ideal Shoe Co. Inc.*, *supra*, 202 Fed. at 199–200; *In re Cole*, 135 Fed. 439, 441 (D.Me.1905), *aff'd*, 144 Fed. 392 (1st Cir.1906); *In re Epstein*, *supra*, 206 Fed. at 569. *Cf. In re Weinreb*, 146 Fed. 243 (2d Cir.1906), *cert. denied*, *Weinreb v. Fink*, 203 U.S. 588, 27 S.Ct. 776, 51 L.Ed. 329 (1906). A party could defeat the turnover order without subjecting himself to a contempt sanction by showing how he had disposed of the property and as a consequence was unable to turn it over to the trustee. *See Oriel v. Russell*, *supra*, 278 U.S. at 363, 49 S.Ct. at 174; *In re Goldberg*, 91 F.2d 996, 997 (2d Cir.1937). Summary turnover proceedings were not appropriate to recover damages for tortious conduct such as embezzlement, misappropriation, or other dissipation of assets of the estate. *In re Joslyn's Estate*, 168 F.2d 803, 807 (7th Cir.1948). *See In re J.S. Mobile Homes*, *supra*, 434 F.2d at 1295; *In re Abesbaum*, 70 F.2d 628, 629 (2d Cir. 1934); *In re Rosser*, 101 Fed. 562, (8th Cir.1900).

In a summary turnover proceeding the trustee had the burden of proving that the property sought to be turned over was property of the debtor's estate. *Buss v. Long Island Storage Warehouse Co.*, 64 F.2d 338, 339–40 (2d Cir.1933). The trustee was also required to show by clear and convincing evidence that the property was in the possession of the party against whom the turnover proceeding was brought. *Oriel v. Russell*, *supra*, 278 U.S.

at 362, 49 S.Ct. at 174. The requirement that the party seeking turnover established his right thereto by clear and convincing evidence had two bases. First, concealment of assets and refusal to deliver assets to the trustee are similar to a charge of fraud, and required the same degree of proof. Second, because the remedy for failure to comply with a turnover order was imprisonment for contempt, a higher burden of proof was required. *See id.* at 362, 49 S.Ct. at 174; *In re Gordon & Gelberg,* 69 F.2d 81, 83 (2d Cir.1934).

The modern bankruptcy practice has largely relegated the differences between summary proceedings and plenary suits discussed above to a place of minor historical significance. The Eighth Circuit summarized those differences as follows:

> The main characteristic differences between a summary proceeding and a plenary suit are: The former is based upon petition, and proceeds without formal pleadings; the latter proceeds upon formal pleadings. In the former, the necessary parties are cited in by order to show cause; in the latter, formal summons brings in the parties other than the plaintiff. In the former, short time notice of hearing is fixed by the court; in the latter, time for pleading and hearing is fixed by statute or by rule of court. In the former, the hearing is quite generally upon affidavits; in the latter, examination of witnesses is the usual method. In the former, the hearing is sometimes ex parte; in the latter, a full hearing is had.

*Central Republic Bank & Trust Co. v. Caldwell, supra,* 58 F.2d at 731–32. Under the Bankruptcy Code and the rules governing bankruptcy procedure, the only meaning "summary" has in the bankruptcy court is "expeditious." *See* Herzog, "The Impact of the Proposed Bankruptcy Rules on the Court," 45 Am.Bankr.L.J. 363, 374 (1971). *Cf.* S.Rep. No. 95–989, 95th Cong., 2d Sess. 17–18 (1978), 1978 U.S.Code Cong.

& Admin.News, pp. 5803–04; H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 445 (1977), 1978 U.S.Code Cong. & Admin.News, pp. 6400.

*Turnover Under the 1973 and 1983 Bankruptcy Rules*

Prior to the promulgation of comprehensive rules of bankruptcy procedure in 1973, the procedural mechanism for resolving bankruptcy matters existed in the General Orders in Bankruptcy promulgated by the Supreme Court. Section 30 of the former Bankruptcy Act, 11 U.S.C. § 53, conferred on the Supreme Court the power to prescribe "[a]ll necessary rules, forms, and orders as to procedure" and for carrying the Act into effect. *See Meek v. Centre County Banking Co.,* 268 U.S. 426, 434, 45 S.Ct. 560, 563, 69 L.Ed. 1028 (1925). The Federal Rules of Civil Procedure were generally applicable to bankruptcy cases and proceedings pursuant to General Order 37.[6] *See In re Kantor's Delicatessen,* 34 F.Supp. 898, 902 (E.D.N.Y.1940).

Section 30 was repealed in 1964 following enactment of Public Law 88–623, 78 Stat. 1001 (Oct. 3, 1964), which added Section 2075 to title 28 of the United States Code. The purpose of 28 U.S.C. § 2075 was to provide for the promulgation of rules of practice and procedure in bankruptcy similar to the Supreme Court's rule-making authority in civil procedure, criminal procedure and admiralty. S.Rep. No. 1561, 88th Cong., 2d Sess. (1964), 1964 U.S.Code Cong. & Admin.News, p. 3804.

With the repeal of Section 30 of the Bankruptcy Act and the enactment of 28 U.S.C. § 2075, the General Orders in Bankruptcy were recast as the Rules of Bankruptcy Procedure. Part VII of the Bankruptcy Rules, which took effect on October 1, 1973, modified turnover procedure as it had developed under prior case law. Rule 701 specified that certain proceedings, including the recovery of money or property,

---

**6.** General Order 37 provided: In proceedings under the Act the Rules of Civil Procedure for the District Courts of the United States shall, in so far as they are not inconsistent with the Act or with these general orders, be followed as

nearly as may be. But the court may shorten the limitations of time prescribed so as to expedite hearings, and may otherwise modify the rules for the preparation or hearing of any particular proceeding.

must be commenced by the filing of a complaint by the plaintiff.[7] *See generally,* Herzog, "The Impact of the Proposed Bankruptcy Rules on the Court," 45 Am. Bankr.L.J. 363, 372–74 (1971); Treister, "A Practicing Lawyer's Primer on the Proposed New Bankruptcy Rules," 45 Am. Bankr. L.J. 343, 348–49 (1971); Trost, "Trial Practice Under the New Bankruptcy Rules," 47 Am.Bankr.L.J. 111, 112–13, (1973); Seligson, "The New Bankruptcy Rules," 76 Com.L.J. 383, 389 (1971); Kennedy, "An Adversary Proceeding Under the New Bankruptcy Rules, with Special Reference to a Sale Free of Liens," 79 Com.L.J. 425–41 (1974); Levit, "The New Bankruptcy Rules," 57 Marq.L.Rev. 1, 17–19 (1973). The Rules did not recognize petitions and orders to show cause as the means for commencing a proceeding in bankruptcy court. *See Kennedy, supra,* at 441. The rules were intended, in part to ignore the distinction between "summary" and "plenary" jurisdiction, and to adopt a uniform procedure for handling bankruptcy litigation. *See In re F & T Contractors, Inc.,* 17 B.R. 966, 983 N. 11 (Bkrtcy.E.D. Mich.1982). Under the Part VII rules, where turnover of property was sought from an adverse claimant, the debtor or trustee was required to commence the proceeding by filing a complaint. Bankruptcy Rule 701(1). *See In re Rene Press, Inc.,* 29 B.R. 446, 447, 10 B.C.D. 774 (Bkrtcy.App. Pan. 1st Cir.1983); *Matter of Edwards Farms, Inc.,* 30 B.R. 842 (Bkrtcy.E.D.Mo. 1983); *Matter of Edwards Farms, Inc.,* 30 B.R. 842 (Bkrtcy.E.D.Mo.1983); *Matter of Springfield Construction Co.,* 31 B.R. 395 (Bkrtcy.S.D.Ohio 1983); *Matter of KLK Furs, Inc.,* 21 B.R. 32, 33 n. 1 (Bkrtcy.S.D. N.Y.1981); *In re Carla Charcoal, Inc.,* 14

B.R. 644 (Bkrtcy.W.D.La.1981); *Matter of Cafes Internationale, Ltd., supra,* 13 B.R. at 157 & n. 1; *In re World Wide Gifts, Inc.,* 10 B.R. 761, 763 (Bkrtcy.S.D.N.Y. 1981). Under Rule 701, most litigated matters in a bankruptcy case were adversary proceedings. *See Matter of Marin Motor Oil, Inc.,* 689 F.2d 445, 450 (3d Cir.1982), *cert. denied, Michaels v. Official Unsecured Creditors' Committee,* 459 U.S. 1207, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983).

Notwithstanding Rule 701, the Bankruptcy Rules permitted turnover to be initiated by motion under certain circumstances, and some jurisdictions permitted it generally as under former practice. *See e.g., Matter of Mosher,* 420 F.Supp. 898 (S.D.Tex.1976); *In re Copeland,* 391 F.Supp. 134 (D.Del.1975), *aff'd in part rev'd in part,* 531 F.2d 1195 (3d Cir.1976); *Matter of Willis,* 34 B.R. 451 (Bkrtcy.M.D.N.C.1983); *In re Information Control Corp.,* 33 B.R. 246 (Bkrtcy.C.D. Cal.1983); *In re Hallman,* 26 B.R. 34 (Bkrtcy.W.D.N.C.1982); *In re Gierhart,* 22 B.R. 20 (Bkrtcy.N.D.Ga.1982); *In re Norsom Medical Reference Laboratory, Inc.,* 10 B.R. 165, 7 B.C.D. 596 (Bkrtcy.N.D.Ill. 1981); *Matter of Haynes,* 9 B.R. 418, 7 B.C.D. 440 (Bkrtcy.N.D.Ind.1981), *aff'd,* 679 F.2d 718 (7th Cir.1982), *cert. denied, Miller v. Haynes,* 459 U.S. 970, 103 S.Ct. 299, 74 L.Ed.2d 281 (1982).

Turnover by a prior receiver or trustee under Section 257 of former Chapter X or under Section 507 of former Chapter XII was generally by motion.[8] Section 2a(21) of the former Act, 11 U.S.C. § 11(a)(21), invested the Bankruptcy Court with jurisdiction to require receivers or trustees appointed by state courts to deliver property

---

**7.** Rule 701 provided: SCOPE OF RULES OF PART VII. The rules of this Part VII govern any proceeding instituted by a party before a bankruptcy judge to (1) recover money or property, other than a proceeding under Rule 220 or Rule 604, (2) determine the validity, priority or extent of a lien or other interest in property, (3) sell property free of a lien or other interest for which the holder can be compelled to take a money satisfaction, (4) object to or revoke a discharge, (5) obtain an injunction, (6) obtain relief from a stay as provided in Rule 401 or 601, or (7) determine the dischargeability of a

debt. Such a proceeding shall be known as an adversary proceeding.

**8.** Section 542 of the present Bankruptcy Code is derived in part from Section 257 of former Chapter X and from Section 507 of former Chapter XII, but is much broader in scope. *See* Malpass, "A Bankruptcy Debtor's Right to Turnover of Property Held by Creditors: A Perspective on Sections 542 and 543 of the Bankruptcy Code," 88 Comm.L.J. 242, 246 (1983).

in their possession or control to the bankruptcy trustee or receiver.[9] The main purpose of Section 2a(21) was to give the bankruptcy court control over disbursements made in non-bankruptcy proceedings prior to the filing of the petition. *Emil v. Hanley*, 318 U.S. 515, 520, 63 S.Ct. 687, 690, 87 L.Ed. 954 (1943).

When Section 2a(21) was applied under Chapter X together with Section 257, the trustee was able to obtain immediate possession of property in the possession of the prior receiver or trustee.[10] Bankruptcy Rule 10–604 prescribed the procedure followed to require such a prior custodian to turnover property. Rule 10–604 states:

(a) *Accounting Required.* Any person required by the Act to deliver property in his possession or control to the trustee, receiver, or debtor in possession, shall promptly file a written report and account with the court in which the Chapter X case is pending with respect to the property of the estate and his administration thereof.

(b) *Examination of Administration.* On the filing of the report and account required by subdivision (a) of this rule and after an examination has been made into the superseded administration, the court shall determine the propriety of such administration, including the reasonableness of all disbursements.

421 U.S. 1019, 1071 (1975) (effective Aug. 1, 1975).

Because of the exclusion contained in former Rule 10–701(1),[11] a proceeding to require turnover by a prior trustee or receiver was not an adversary proceeding but a contested matter governed by Rule 914, the predecessor of Bankruptcy Rule 9014.[12] Under Rule 914, contested matters involving relatively simple factual and legal issues could be adjudicated on motion after reasonable notice. If the issues became more complex, the Rule enabled the bankruptcy court to make other rules applica-

---

**9.** Section 2a(21) provided in pertinent part: (a) The courts of the United States hereinbefore defined as courts of bankruptcy are hereby created courts of bankruptcy and are hereby invested, within their respective territorial limits as now established or as they may be hereafter changed, with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this title, in vacation, in chambers, and during their respective terms, as they are now or may be hereafter held, to—

\* \* \* \* \* \*

(21) Require receivers or trustees appointed in proceedings not under this title, assignees for the benefit of creditors, and agents authorized to take possession of or to liquidate a person's property to deliver the property in their possession or under their control to the receiver or trustee appointed under this title or, where an arrangement or a plan under this title has been confirmed and such property has not prior thereto been delivered to a receiver or trustee appointed under this title, to deliver such property to the debtor or other person entitled to such property according to the provisions of the arrangement or plan, and in all such cases to account to the court for the disposition by them of the property of such bankrupt or debtor....

**10.** Section 257 of the Act provided: The trustee appointed under this chapter, upon his qualification, or if a debtor is continued in possession, the debtor, shall become vested with the rights, if any, of such prior receiver or trustee in such property and with the right to the immediate possession thereof. The trustee or debtor in possession shall also have the right to immediate possession of all property of the debtor in the possession of a trustee under a trust deed or a mortgagee under a mortgage.

**11.** Rule 10–701 provided: Part VII of the Bankruptcy Rules governs any proceeding instituted by a party before a bankruptcy judge in a chapter X case to (1) recover money or property other than a proceeding under Rule 10–217 or Rule 10–604, (2) determine the validity, priority, or extent of a lien or other interest in property, (3) sell property free of a lien or other interest for which the holder can be compelled to take a money satisfaction, (4) obtain an injunction, or (5) obtain relief from a stay as provided in Rule 10–601. Such a proceeding shall be known as an adversary proceeding.

**12.** Rule 914 provided in pertinent part as follows: In a contested matter in a bankruptcy case not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought. In all such matters, unless the court otherwise directs, the following rules shall apply: 721, 725, 726, 728–737, 741, 742, 744.1, 752, 754–756, 762, 764; 769, and 771. The court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply.

ble. *See* 13 COLLIER ON BANKRUPTCY ¶ 914.03, at 9–60 to 9–61 (14th ed. 1977).

Similarly, Section 507 of the 1898 Act allowed a Chapter XII trustee to obtain immediate turnover of property of the debtor in possession of prior receiver or trustee.[13] Section 507 was implemented by former Rule 12–50.[14] *See* 14A COLLIER ON BANKRUPTCY ¶ 12–50.03, at 12–50–2 to 12–50–3 (14th ed. 1978). By the better view, according to COLLIER, turnover pursuant to Section 507, like that under 257, was a contested matter and could be initiated by motion under Rule 914. *Id.* ¶ 12–50.-06, at 12–50–6 to 12–50–7. It is from these historical antecedents that turnover by motion became commonplace.

Under Section 405(d) of the Bankruptcy Reform Act of 1978, Pub.L. 95–598, 92 Stat. 2549, 2685 (Nov. 6, 1978), the Bankruptcy Rules in effect on September 30, 1979, remained in effect to the extent not inconsistent with the provisions of the statute, until repealed or superseded by new rules promulgated under 28 U.S.C. § 2075.

On April 25, 1983, the Chief Justice transmitted new Bankruptcy Rules to Congress. No action was taken by Congress during the 90 days following receipt of the Rules. Accordingly, pursuant to 28 U.S.C. § 2075, the new rules became effective on August 1, 1983, and superseded the former rules. Unlike the former rules, there is no provision which would permit a turnover proceeding to be commenced by motion under any circumstances.[15]

*The Debtors' Arguments.*

Counsel for the debtors argues that notwithstanding the requirement of Rule 7001, the Court should waive its application because (1) filing an adversary proceeding is more costly to debtors; and (2) debtors would be unfairly prejudiced by the time-consuming process of litigation under the Part VII Rules. There is little merit to these arguments.

■ With respect to the question of additional expense to the debtor, several points deserve consideration. First, as to the $60.00 filing fee for civil actions, "[w]hen the debtor institutes an adversary proceeding in the bankruptcy court by original process or removal, no filing fee is required to be collected." Administrative Office of the United States Courts, Guide to Judiciary Policies and Procedures Vol. V, Transmittal 1C Ch. II, at 14 (Aug. 5, 1983). Second, there is no significant difference in pleading that would require greater attorney's time in draftsmanship. Motions are required to state with particularity the basis therefor and the relief sought. *See*

---

**13.** Section 507 provided in pertinent part: The trustee appointed under this chapter, upon his qualification, or, if a debtor is continued in possession, the debtor, shall become vested with the rights, if any, of such prior receiver or trustee in such property and with the right to the immediate possession thereof. The trustee or debtor in possession shall also have the right to immediate possession of a trustee under a trust deed or a mortgagee under a mortgage.

**14.** Rule 12–50 provided: Accounting by Prior Custodian of Property of the Estate. (a) Accounting Required. Any person required by the Act to deliver property in his possession or control to the trustee or debtor in possession, shall promptly file a written report and account with the court in which the Chapter XII case is pending with respect to the property of the estate and his administration thereof. (b) Examination of Administration. On the filing of the report and account required by subdivision (a) of this rule and after an examination has been made into the superseded administration, the court shall determine the propriety of such

administration, including the reasonableness of all disbursements.

**15.** Bankruptcy Rule 7001 provides: An adversary proceeding is governed by the rules of this Part VII. It is a proceeding in a bankruptcy court (1) to recover money or property, except a proceeding under § 554(b) or § 725 of the Code, Rule 2017, or Rule 6002, (2) to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d), (3) to obtain approval pursuant to § 363(h) for the sale of both the interest of the estate and of a co-owner in property, (4) to object to or revoke a discharge, (5) to revoke an order of confirmation of a chapter 11 or chapter 13 plan, (6) to determine the dischargeability of a debt, (7) to obtain an injunction or other equitable relief, (8) to subordinate any allowed claim or interest, except when subordination is provided in chapter 9, 11, or 13 plan, (9) to obtain a declaratory judgment relating to any of the foregoing, or (10) to determine a claim or cause of action removed to a bankruptcy court.

Bankruptcy Rule 9013. *See generally*, W. Winborne, *Motions in Federal Court* (1984). A motion will seldom be found to be too vague to satisfy the particularity requirement, and will not be stricken if the court can comprehend the basis of the motion and deal fairly with it. *See McGarr v. Hayford*, 52 F.R.D. 219, 221, 15 F.R. Serv.2d 236 (S.D.Cal.1971). Likewise, notice pleading under the federal rules requires that a complaint merely set forth (1) the basis of the Court's jurisdiction; (2) a "short and plain statement of the claim"; and (3) a prayer for relief. Rule 8(a), Fed. R.Civ.P.[16] In both adversary proceedings and contested matters the vehicles for discovery under the Federal Rules are available to the parties. Any matter relevant to the pending motion or complaint is discoverable by resort to depositions, interrogatories, document production, and requests for admission. Rule 26, Fed.R.Civ.P. *See* Bankruptcy Rules 7001, 9014. Thus, it does not appear that motion practice in turnover litigation would result in any substantial financial saving to acutely distressed debtors.

Of greater concern to the Court and these debtors is the necessity for prompt action in turnover matters. *Cf.* Advisory Committee Note Rule 7001. The existing Bankruptcy Rules provide a sufficient framework to achieve that objective. Under Bankruptcy Rule 7012(a), a defendant

in an adversary proceeding is required to serve an answer within 30 days after the issuance of the summons, "except when a different time is prescribed by the court." The exigent nature of turnover proceedings will usually warrant reduction of time under Bankruptcy Rule 9006(c). The Court will also give special consideration to requests to reduce the time for responses to discovery.[17]

■ There are important differences between adversary proceedings and contested matters. *In re Dolly Madison Industries, Inc.*, 1 B.C.D. 1313 (Bkrtcy.E.D. Pa.1975). In general, an adversary proceeding involves more complex issues affecting substantial rights of the debtor, its creditors and third parties. The filing of a complaint triggers application of the Federal Rules of Civil Procedure, which have proved effective in facilitating adjudication of a wide range of controversies. *Cf.* Yankwich, "The Impact of the Federal Rules of Civil Procedure on Bankruptcy," 42 Cal.L.Rev. 738 (1954). To some extent contested matters necessarily adopt the same procedures.[18] However, motion practice is largely governed by Local Rules and is better suited to relatively uncomplicated disputes that can be adjudicated summarily. More complete relief, trial by jury, the possibility of pleading affirmative defenses and counterclaims, interpleading, joinder of

16. With the abolition of the strict common law rules of pleading and the adoption of simplified "notice pleading" under the federal rules, a party's pleadings are not to be read with "the inability of the seventeenth century common law to understand or accept a pleading that did not exclude every misinterpretation capable of occurring to intelligence fired with a desire to pervert." *Paraiso v. United States*, 207 U.S. 368, 372, 28 S.Ct. 127, 129, 52 L.Ed. 249 (1907).

17. There are seldom significant factual disputes in turnover litigation. Therefore, summary judgment is often appropriate. *See e.g., Matter of Russell*, 34 B.R. 49 (Bkrtcy.M.D.Fla.1983); *Diflorio v. United States*, 30 B.R. 815, 10 B.C.D. 1017 (N.D.N.Y.1983); *In re Barnes Freight Lines, Inc.*, 29 B.R. 664 (Bkrtcy.N.D.Ga.1983); *In re Sunrise Equipment and Development Corp.*, 24 B.R. 26 (Bkrtcy.D.Ariz.1982); *Matter of Blatter*, 16 B.R. 137 (Bkrtcy.S.D.N.Y.1981); *In re International Horizon, Inc.*, 15 B.R. 798, 8 B.C.D. 510

(Bkrtcy.N.D.Ga.1981), *rev'd* 21 B.R. 414, 9 B.C.D. 357 (N.D.Ga.1982). In *In re Alpa Corp.*, 11 B.R. 281, 7 B.C.D. 791 (Bkrtcy.D.Utah 1981), the Internal Revenue Service levied upon and seized all equipment, inventory, and other property of the debtor six days before it filed a Chapter 11 Petition. Three days after filing, the debtor commenced an adversary proceeding to compel turnover of the property held by the I.R.S., accompanied by a motion for summary judgment. By stipulation of the parties and in view of the urgency of the matter, this Court heard the debtor's motion for summary judgment and the motion of the I.R.S. to dismiss the proceeding the following day.

18. A procedural rule has been defined as "one designed to make the process of litigation a fair and efficient mechanism for the resolution of disputes." *See* Ely, "The Irrespressible Myth of Erie," 87 Harv.L.Rev. 693, 724 (1974).

parties, class actions, intervention, summary judgment, appeal as of right, and an opportunity for more thorough discovery and trial preparation are familiar features of the Federal Rules of Civil Procedure which are available in adversary proceedings.[19] The Bankruptcy Court's powers, although very broad, must be exercised in accordance with the procedural requirements of the Code and Rules. *See In re Chanticleer Associates, Ltd.,* 592 F.2d 70, 74 (2d Cir.1979). *Cf. In re UNR Industries, Inc.,* 23 B.R. 144, 9 B.C.D. 781 (Bkrtcy.N.D.Ill.1982) (order modifying automatic stay vacated because the product of a creditor's motion, not an adversary complaint as required by former bankruptcy rules); *Matter of Allen,* 17 B.R. 119, 8 B.C.D. 945 (Bkrtcy.N.D.Ohio 1981) (motion to lift automatic stay in Chapter 13 case dismissed because relief sought required commencement of adversary proceeding under former rules).

## CONCLUSION

Prior to enactment of the 1973 Bankruptcy Rules, a course of practice developed respecting turnover of property to the trustee. Upon motion or petition of the trustee, the court would issue an order directing any person who might be in possession of property of the estate to show cause why such property should not be turned over to the trustee. If the adverse claims of the party in possession of the property was found to be substantial, the bankruptcy court could proceed no further and the trustee would have to commence a plenary suit in a court of competent jurisdiction. If, however, the adverse claim was found to be merely colorable, the matter could be summarily decided.

Many bankruptcy proceedings are basically administrative in nature, involving no adverse parties and requiring few of the procedural safeguards characteristic of civil litigation. But turnover litigation is not administrative. It may, and frequently does, affect substantial rights of the ad-

verse claimant. The modern bankruptcy rules provide a mechanism for resolving turnover disputes in a manner that affords the parties a fair opportunity to present their sides of the issue, while promoting efficiency and uniformity in practice. To permit turnover by motion in this case would justify permitting it in other cases as well. The Bankruptcy Rules mandate that the court await the commencement of an adversary proceeding before determining whether turnover shall be required. Thus, before the bankruptcy court may order turnover of property of the estate under Section 542, a complaint must be filed, process served, an answer or motion interposed, discovery conducted, a hearing held, and findings of fact and conclusions of law made.

If the turnover complaint is accompanied by a written request for expedited consideration, setting forth the reasons and necessity therefor, together with such motions for reduction of time as may be appropriate, the Court will schedule an expedited trial within thirty days after the request. In this manner, the needs of litigants will be protected without doing violence to the Bankruptcy Rules.

In view of its determination that the turnover order was improvidently granted because counsel proceeded by motion rather than by adversary complaint, there is no need to consider the further argument that notice was defective. It follows, therefore, that The State Bank's motion to vacate the Court's turnover order should be granted. Accordingly,

IT IS HEREBY ORDERED, that this Court's turnover order of July 26, 1984, be, and the same hereby is, vacated.

---

**19.** *Cf. Maiorino v. Branford Savings Bank,* 691 F.2d 89, 94 (2d Cir.1982) (Lumbard, J., dissenting) (An order granting or denying turnover is final and appealable).