**In re WORLD WIDE GIFTS, INC., et al., Bankrupts.**

**Jay M. HALPERT, Trustee in Bankruptcy of World Wide Gifts, Inc., et al., Plaintiff,**

**v.**

**INTERSTATE COMPUTER SERVICE, INC., Defendant.**

**Bankruptcy Nos. 77–B–661 to 77–B–673.**

United States Bankruptcy Court, S. D. New York.

April 28, 1981.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for Trustee of Bankrupts; Martin F. Brecker and Louis A. Scarcella, New York City, of counsel.

Alfred H. Marks, Jericho, N. Y., for defendant.

## OPINION

ROY BABITT, Bankruptcy Judge:

On March 25, 1978 World Wide Gifts, Inc. and related companies (World Wide) filed their Chapter XI petitions under the now repealed provisions of the 1898 Bankruptcy Act, Sections 301 *et seq.*, 11 U.S.C. (1976 Ed.) §§ 701 *et seq.*, and the implementing Bankruptcy Rules, Rules 11–1 *et seq.*, 415 U.S. 1003 *et seq.*[1] These Chapter XI cases aborted and bankruptcy administration followed. Jay M. Halpert was qualified and is acting as trustee.

---

1. As the petition was filed before the effective repeal of the 1898 Act, its provisions control this dispute. Section 403(a) of Title IV of the 1978 bankruptcy reform legislation, 92 Stat. 2549, 2683.

World Wide was engaged in the mail order merchandising business. In the ordinary course of this kind of enterprise, World Wide maintained a customer list containing names of those who had previously purchased from World Wide or responded to its advertising campaigns. Interstate Computer Services, Inc. (ICS or defendant) was hired to maintain this customer list. ICS prepared computer tapes from the raw data submitted by World Wide, all of which are presently in ICS' possession.

On January 16, 1980 the trustee, in furtherance of his statutory duty to marshal all assets of the estate of World Wide, Section 47(a), 11 U.S.C. (1976 Ed.) § 75(a), advised ICS by letter that the computer tapes were the estate's property, and had to be turned over, and that if there were no response within ten days, a turnover action would be started. In response to this letter, Max Houss, president of ICS, telephoned the trustee's attorney on January 24, 1980 and advised that ICS' attorney was then on vacation, but would be in contact upon his return the next week.

As neither defendant's attorney nor defendant ever responded, an adversary proceeding was commenced on March 14, 1980 to compel ICS to surrender the computer tapes and to account for and surrender all funds received by it because of its wrongful retention. Rule 701 *et seq.*, 411 U.S. 1068 *et seq.* The complaint was duly served by mail on March 14, 1980 pursuant to Rule 704(c), and the date fixed by the court as defendant's last day to file a motion or answer was April 2, 1980. The summons clearly stated that if neither of these steps were taken, judgment by default would be entered. April 16, 1980 was set for the pre-trial conference.

In disregard of these limitations, defendant failed to file a timely motion or answer, nor did it appear at the April 16th pre-trial conference. On April 14, 1980 this court

entered its default judgment by which the defendant was ordered to surrender the computer tapes, to render a written account of all funds received by virtue of their wrongful retention and to surrender all such funds to the plaintiff-trustee. A certified copy of this judgment was duly served by mail on April 16, 1980. Rule 755(a).

Defendant failed to abide by the judgment. Indeed, it took no steps at all. This inaction led the trustee to move to certify the defendant for civil contempt pursuant to Section 41(a)(1) of the Act, 11 U.S.C. (1976 Ed.) § 69(a)(1), and Rules 920(a)(2) and (4), 411 U.S. 1100.

This application finally moved the defendant to action. It filed a cross-motion for the following relief: (1) a denial of plaintiff's motion to certify for civil contempt; (2) a vacatur of the default judgment; and (3) authorization to file an answer to plaintiff's complaint to set forth the existence of an artisan's lien on the tapes in its possession.

Defendant first alleges defects going to the validity of the April 14, 1980 default judgment. Then, it relies on Rule 906(b)(2),[2] 411 U.S. 1094, for enlargement of time on the grounds of "excusable neglect", and also alleges excusable neglect as a generally available standard warranting setting aside of a default judgment, Rule 924, 411 U.S. 1102, making F.R.Civ.P. 60 applicable in the context of this dispute.

■ The linchpin of defendant's procedural attack goes to the timing of the sequence of events just described. Defendant takes issue with the entry of an April 14 default judgment two days before the pre-trial conference scheduled in the summons. This challenge must fail for the key date here is April 2, 1980, the last day for the defendant to file a motion or an answer. Once this date was allowed to pass, the

---

**2.** The relevant part of Rule 906(b)(2) is as follows:

"(b) Enlargement. When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion ... (2) upon application made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; ...."

court was empowered to enter a default judgment, for the default rendered unnecessary a pretrial conference, the purpose of which is to bring in both appearing parties to narrow and define the issues and the like.

■ Defendant's reliance on F.R.Civ.P. 12 is also misplaced. Although Rule 12 may permit a defendant three additional days to respond if service of process is made by mail, it changes nothing here. Rule 906(e) of the Bankruptcy Rules, 411 U.S. 1095, controls here, and it unequivocally provides that "service is complete upon mailing". In any event, the additional three days given by Rule 12, even if it were operative, would not remedy a forty day delay by the defendant in taking some action.

■ Defendant's final procedural challenge rests on what it says is the absence of an inquest by this court prior to its entry of the default judgment. But Rule 755(a), 411 U.S. 1083, turns this challenge aside for it provides for the entry of a judgment of default upon request, if a party without sufficient excuse "has failed to plead or otherwise defend an action". Though the court may withhold entry of a judgment if it deems further investigation or hearings necessary, the rule does not oblige such inquiry.

■ So, the court turns to the inquiry as to whether the defendant is to be exculpated by reason of "excusable neglect" within the meaning of Rule 906(b) for the enlargement of time after the expiration of the specified period, or Rule 60b's standard for relief from a court order. In seeking such relief, the defendant has the burden of demonstrating the existence of facts sufficient to show the requisite neglect to invoke this doctrine. *In re Stone*, 588 F.2d 1316 (10th Cir. 1978); *In re McFarland*, 4 C.B.C. 77 (W.D.Wis.1975). The excuse offered by defendant's president, Max Houss, is that he was busily engaged in devoting his personal attention to business activities and therefore found no time to notify his attorney.

■ The words "excusable neglect" are words of art. They generally denote the failure to timely perform a duty due to circumstances beyond the reasonable control of the person whose duty it is to perform. *In re Heath*, 18 C.B.C. 443 (D.Nev. 1978). The requirement of a showing of "excusable neglect" helps to secure the speedy and efficient administration of the legal system by insisting that "one who is a party to litigation must attend to it and give it that amount of attention which one of ordinary prudence gives to important business". *Nelson v. Coleman Co.*, 41 F.R.D. 7 (D.S.C.1966). Defendant's excuse falls far short of this standard for its president was undeniably served with process and was fully cognizant of the pending litigation. He claims to have been preoccupied with his company's business and by his own inadvertence failed to timely contact counsel. But by ordinary diligence he should have found the time to protect defendant's own interests from the sequential unfolding of the adversary system. The summoning of a defendant is serious business and the possible consequences of a lawsuit should at least be given the same if not a greater priority than less serious matters of commerce. The time lapse here of more than a month suggests more a disregard of process than a merely misplaced order of priority. Such want of diligence, a benign expression of defendant's conduct, can only be characterized as mere carelessness, a negligent disregard, behavior falling short of "excusable neglect". *Usery v. Weiner Bros., Inc.*, 70 F.R.D. 615, 616–617 (D.Conn.1976); *In re Lee*, 18 C.B.C. 136 (E.D.Va.1978).

> "The extension will not be granted when the delay could have been prevented by the diligence of the party. Ordinary negligence is not enough".

*Beneficial Finance v. Manning*, 4 B.C.D. 304 (D.Conn.1978), where the excuse offered was the attorney's own involvement in other matters.

The time scheme governing the movement of the litigation process must be adhered to, for when the law speaks, the parties must listen and adhere. See *Usery*

*v. Weiner Bros., Inc., supra.* As District Judge Pollack observed:

> "The courts have been unyielding in requiring that a party show good reason for his failure to take appropriate action sooner".

*United States v. Martin,* 395 F.Supp. 954, 961 (S.D.N.Y.1975).

 Under these circumstances, to vacate the default judgment here would be to sanction propositions contrary to the administration of our adversarial type of legal system. At the outset behavior such as that negates the inherent power of

> "every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants".

*Landis v. North American Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936). And, this wise teaching is surely appropriate in this context where the interests of the bankruptcy process are best served by speedy and diligent administration by all those involved in it. Moreover, if the legal system is to thrive and prosper, courts should place their seals of benediction on disregard of that system's process only where the standards which would exculpate the disregard are strictly applied.[3]

To be sure, this court is not unaware that our system favors adjudication, *Savage v. Cannon,* 204 S.C. 473, 30 S.E.2d 70 (1944), but nonetheless, the process of the court is not to be disregarded so blithely nor for so inadequate reason as defendant offers.

It appears to this court that its limited contempt power under Rule 920(a)(3) is inadequate to further the trustee's quest for assets, by use of the turnover process, *Maggio v. Zeitz,* 333 U.S. 56, 61, 68 S.Ct. 401, 404, 92 L.Ed. 476 (1948), or the speedy administration of this estate and that certification to a district judge is called for as prescribed by Rule 920(a)(4). See *Fidelity Mortgage Investors v. Camelia Builders,*

*Inc.,* 550 F.2d 47 (2d Cir. 1976), *cert. den.* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977). Accordingly, unless the defendant complies with the turnover order of April, 1980, and thereby may be considered to be purged of its contempt, the trustee will do the things necessary under Rule 920(a)(4) so that a district judge may implement this court's power.

The trustee's motion is granted as provided herein. The defendant's cross-motion is denied. Submit an order.

---

3. In *Usery v. Weiner Bros., Inc.,* D.C.Conn., 70 F.R.D. 615, 616, the defendant's excuse for failure to plead was that when the action was commenced, it was immersed in the midst of the busiest season.

In *In re Lee,* 18 C.B.C. 136, counsel for the creditor attempting to belatedly object to the debtor's discharge, raised his own business as his excuse.
Both excuses were rejected.