**In re Allen B. CARR, Debtor.**

**Bankruptcy No. 8100864.**

United States Bankruptcy Court, D. Rhode Island.

Oct. 14, 1986.

Russell D. Raskin, Raskin & Berman, Providence, R.I., for Cecile Robert.

Andrew S. Richardson, Boyajian, Coleman & Harrington, Providence, R.I., for Trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ARTHUR N. VOTOLATO, JR., Bankruptcy Judge.

Heard on the motion of Cecile Robert to strike the trustee's objection to her proof of claim #18, and on Robert's motion to vacate our order disallowing that claim.[1]

### FACTS

On September 4, 1984, Cecile Robert filed a proof of claim[2] in the amount of $22,539, for secretarial services and for money allegedly loaned to Allen Carr. The trustee objected to the claim as filed,[3] and on September 5, 1985, with no response filed by Robert, the claim was disallowed, pursuant to Local Bankruptcy Rule 10 (amended March 11, 1986).[4]

On December 5, 1985, *three months* after entry of the order disallowing her

1. Robert is also requesting reconsideration of the disallowance of her claim (*see* Bankruptcy Rule 3008), and an extension of time within which to file a response to the trustee's objection.

2. Since Cecile Robert is also a debtor in this Court *see* BK No. 8100865, any dividend payable on account of her claim would inure to the benefit of her creditors, subject to any exemption to which she is entitled.

3. "The trustee objects to the allowance of claim no. 18 filed by Cecile Robert on the grounds

that said claim was filed out of time, the claim does not represent an obligation of the debtor, the claim is not substantiated as to amount, and does not constitute *the kind* which is allowable under the provisions of the United States Bankruptcy Code."

4. "If no response to [an objection to a claim] is filed as required, the Court will deem that pleading unopposed and will grant the relief requested" (emphasis omitted).

claim, Ms. Robert filed a motion requesting that "the trustee's objection to her claim be stricken on the grounds that the trustee has no standing to so object." On January 14, 1986, after hearing, Robert's motion to strike was denied, and she appealed that ruling to the District Court.

Earlier, on January 2, 1986, Robert had moved to vacate the order sustaining the trustee's objection to her claim, alleging that neither she nor her counsel had received "written notice from the clerk [of the Bankruptcy Court] concerning the date when the ten (10) day period to respond to the objection began, nor any notice of the granting of the trustee's objection." *See* Memorandum in Support of Motion to Vacate Trustee's Objection to Claim of Cecile Robert. After hearing on February 20 and March 6, 1986, the motion to vacate was taken under advisement. The findings of fact and conclusions of law herein apply to both the motion to strike, which was denied on January 14, 1986, and appealed, and to our decision below on the motion to vacate.

### DISCUSSION

*Motion to Strike*

In her motion to strike Cecile Robert contends that John Boyajian, the standing Chapter 13 trustee in this pilot jurisdiction, did not have standing to object to her claim. She argues that on April 12, 1982, when the case was converted from Chapter 13 to Chapter 7, the tenure of the Chapter 13 trustee terminated pursuant to 11 U.S.C. § 348(e), and that because (through oversight) he did not receive a formal notice of appointment from the United States Trustee as the Chapter 7 interim trustee until December 26, 1985 (*see* 11 U.S.C. § 15701), Boyajian lacked standing to object to her claim, since he was not a "party in interest," within the meaning of 11 U.S.C. § 502(a):[5] "There being no party in interest who has objected to the movant's claim, the movant requests that the objection ... be stricken and that the claim be allowed." Memorandum in Support of Motion to Strike Trustee's Objection to Proof of Claim of Cecile Robert. Assuming, arguendo only, that Robert's motion were to be granted, the claim would still be subject to objection by the trustee, who now qualifies as a party in interest even under Robert's definition of the term.

Notwithstanding the foregoing practical consideration, Robert's argument that the trustee lacked standing to object to her claim is also rejected for the following substantive reasons. Cecile Robert has been listed as a creditor and has had notice of Allen Carr's bankruptcy[6] at least since January 1982, when she received notice of Carr's motion to add her as a creditor, and three weeks later received a copy of the order granting said motion. Because of the particular facts of this case, we find that Robert has waived and/or is estopped from now raising the argument that Boyajian was without authority to act as trustee after conversion and before the filing of the Certificate of Appointment. We note also that Ms. Robert's attorney, Russell Raskin, Esq., is no newcomer to this case either,—he initially represented both Allen Carr and Cecile Robert, and between the time of conversion in April 1982 and his withdrawal as attorney for Carr in July 1982, raised no objection to Boyajian functioning as the interim Chapter 7 trustee.[7] For this reason alone, the motion to strike should have been, and was denied.

**5.** 11 U.S.C. § 502. Allowance of claims or interests
(a) A claim or interest, proof of which is filed under section 501 of this title [11 U.S.C. § 501], is deemed allowed, unless a party in interest ... objects.

**6.** Since the debtor and Cecile Robert had close personal and business ties at all times relevant to these proceedings, neither could reasonably deny knowledge of the activities of the other.

**7.** The notice of the § 341 meeting which was mailed on April 23, 1982 incorrectly stated that Boyajian had been appointed interim trustee, when in fact, the United States Trustee did not formally designate him trustee until December 1985. At what point Mr. Raskin learned that Boyajian had not been appointed in 1982 is not clear, but even Raskin does not blame his tardiness in raising the issue of standing on the error in the notice of the § 341 meeting.

However, in considering the question of standing, we also need to address the role (in pilot areas) of the United States Trustee, as it impacts upon the ability of the Court to function efficiently. To begin with, it is basic that when a Chapter 13 case is converted, the appointment of a Chapter 7 trustee is (or should be) the first order of business, if the case is to proceed. Here, as in all pilot jurisdictions, appointment of the Chapter 7 trustee is an administrative responsibility of the United States Trustee. In this case Mr. Boyajian did not receive his formal notice of appointment as Chapter 7 trustee until December 1985, but that omission was neither attributable to nor even noticed by the Court (or anybody else, including the debtor and/or the alleged creditor). In its attempt to streamline the operation of the bankruptcy court, we doubt that Congress could ever have intended that the validity of courts' actions should be dependent on the completion of the formal actions of the United States Trustee.[8] This case is an excellent example of why formality must give way to substance, and why the court must be able to function, independent of the United States Trustee's success, or lack thereof, in keeping up with his/her paperwork. We would be flabbergasted to learn that Congress, in creating the office of the United States Trustee primarily to assist the court by taking over its non-judicial work, could have intended that the administrative tail should wag the judicial dog in the way suggested by the claimant in this case. We belabor this point because of its potential impact on the ability of pilot area bankruptcy courts to act at all, without first determining (probably at their peril) that the United States Trustee has touched all the technical bases. If that were the case, rather than relieving bankruptcy courts of administrative work, there will have been added yet another layer of bureaucratic responsibility, plus the impediment that the Bankruptcy Court would be prevented from performing judicial functions merely by the inaction, or the technical miscue of an agency over which it has no control. *See* 16 Am.Jur.2d *Constitutional Law* §§ 294, 295 (1979) (for discussion of doctrine of separation of governmental powers).

Boyajian testified, and there is no evidence to the contrary, that from the inception of the pilot program in this jurisdiction, it has been the practice and policy of the United States Trustee to appoint him as trustee in all converted Chapter 7 cases, unless he is precluded from so acting because of a conflict of interest or similar reason. Our records show that since October 1979, Mr. Boyajian has served as the only Chapter 13 standing trustee in Rhode Island, and that he also served as trustee in all (but one) Chapter 7 cases converted from Chapter 13. Accordingly, we conclude that the filing of the Certificate of Appointment form is but a ministerial act, memorializing the appointment of Mr. Boyajian as the de facto Chapter 7 interim trustee after conversion. To hold otherwise would require the administration of practically this entire case (and who knows how many others), to begin anew.[9] Imagine the chaos if, for instance, sales of property and the countless other matters involving parties not privy to this case were void, because through a clerical error, the formal appointment of the Chapter 7 trustee had fallen inadvertently through the cracks. We reject the suggestion that a statute designed to ease administrative red tape could be construed as proposed by the claimant. Accordingly, despite the fact that the appointment form was not filed at the time of conversion, we conclude as a

---

8. If that were so, then it would be necessary for cases to remain inactive after conversion, until the United States Trustee appointed a trustee; in this case, some 3½ years later.

9. This would include conducting the § 341 meeting, filing notices of intended sale, preparing accounts and summaries of distribution, compromising actions, objecting to claims, objecting to the allowance of attorneys' fees, and most importantly in this case, those services performed by John Boyajian to void a fraudulent conveyance of Allen Carr's house at 22 Halsey Street, from Carr to Robert, and to undo the sale of that property to a good faith purchaser for value.

matter of law that Mr. Boyajian was authorized to perform all of the duties of the Chapter 7 trustee since conversion, including filing the objection to Robert's claim. *See In re Holiday Isles, Ltd.,* 29 B.R. 827, 829 (Bankr.S.D.Fla.1983) ("a failure to fulfill all the requirements of qualification does not prevent a person from being treated as a de facto trustee"). We also order, sua sponte, for what it is worth, that the United States Trustee's appointment of John Boyajian in this case is effective, nunc pro tunc, retroactive to April 12, 1982, *see* 11 U.S.C. § 105(a), and that all of his actions to date herein are ratified and approved.[10]

*Motion to Vacate*

In her motion to vacate, this creditor is seeking relief from an order entered as a result of her failure to file a responsive pleading, as required by Local Bankruptcy Rule 10 (amended March 11, 1986). Fed.R. Civ.P. 60(b),[11] which governs here, provides in relevant part that:

> *RULE 60. Relief from Judgment or Order*
>
> (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

In ruling upon the instant motion to vacate, there are four primary considerations:

> whether the defaulting party has presented a plausible excuse explaining

the reasons for the default, whether the defaulting party acted promptly to vacate the default, whether the defaulting party asserts a meritorious [claim],[12] and whether the non-defaulting party will be prejudiced by setting aside the default. *Turner Broadcasting System, Inc. v. Sanyo Electric, Inc.,* 33 B.R. 996 (N.D.Ga. 1983).

On the facts before us, and for the following reasons, Robert's motion to vacate is denied.

It is undisputed that Cecile Robert's counsel was served with, and received a copy of the trustee's objection to her claim in August 1985, but he offers the following explanation as to why a response to that objection was not filed within the ten day period prescribed in Local Rule 10:

> Although Local Rule 10 provides that an objector must object within ten (10) days after service of an objection to a claim, the Court's practice has long been to provide the receiving attorney with a copy of the motion, along with a statement setting the date from which the ten (10) day period is to run. In the present matter, the Clerk's Office did not do so. Your movant relied upon previous Court practice and did not schedule the matter for objection until receipt from the Clerk's Office of the objection with the date the ten (10) day objection period was to run.

Memorandum in Support of Motion to Vacate at 1.

In March 1984, Local Rule 10 was amended to provide, inter alia, that a claim would be disallowed if the claimant did not respond within 10 days to objections. Bankruptcy Court Clerk James M. Lynch testified that because the rule change created a departure from past practice, and to inform attorneys, pro se debtors, and interested parties of said change, a temporary

---

**10.** We also approve, nunc pro tunc, as to all United States Trustee cases pending in this jurisdiction, the belated performance of all other ministerial acts required of the United States Trustee in connection with any statute or rule governing its function.

**11.** Bankruptcy Rule 9024 states that "Rule 60 F.R.Civ.P. applies in cases under the Code."

**12.** Since the validity of Robert's claim has not been litigated, and because the Court declines here to express an opinion as to its merit, we address only the remaining three factors.

procedure was instituted at the time of the March 1984 amendment, whereby, together with the copy of the objection, the following legend was included:

> Pursuant to the Local Rules of this Court, unless a party in interest files a written [response] ... to this [objection] with the Clerk, U.S. Bankruptcy Court, 380 Westminster Mall, Providence, R.I., on or before the tenth day from the date below, the pleading shall be deemed unopposed and will be granted.
>
> Dated:

Mr. Lynch testified that the date from which the ten day period began to run was usually within two to three days of the filing of the objection. He also explained that by July 1984, after approximately four months operating under the new rule, it was his opinion that the local bar had had adequate opportunity to become acclimated to the "ten-day rule," and he instructed his staff to no longer include the quoted legend on the notice of objection, except in cases involving pro se litigants, out-of-state counsel, or other attorneys who were not frequent or regular practitioners in the Bankruptcy Court. Mr. Lynch stated that Mr. Raskin was considered to be in the category of "frequent practitioners"[13] who were no longer to receive the "ten day notice" after July 1984. In Mr. Lynch's opinion, after four or so months of operating under his informal "advisory program," counsel (especially Mr. Raskin) should have been weaned from the practice.

Mr. Raskin also urges that although the procedure described by the Clerk was intended to assist litigants by calling the amendment to the attention of their attorneys, the actual result was to mislead him into believing that no response to an objection was necessary until the Clerk notified him of the start of the ten day response period. Mr. Raskin contends that his reliance on this practice was reasonable, and that his client "has been denied an opportunity to establish her claim because of the clerk's discrimination against her counsel." Robert's Supplemental Memorandum at 4. We disagree, and reject the characterization of the actions of the Clerk as "discrimination" against Mr. Raskin. In the circumstances, we do not find Mr. Raskin's assumptions and reliance to be reasonable, especially considering his tardiness in raising this issue.

■ Excusable neglect, as defined in Fed.R.Civ.P. 60, is *not* the equivalent of negligence or carelessness, nor does it equate with ignorance of the law, *see* 11 Wright and Miller, *Federal Practice and Procedure: Civil* § 2858, at 170–171 nn. 7–9 (1973), and courts "have been unyielding in requiring that a party show good reason for ... failure to take appropriate action *sooner." Id.* at § 2857 (emphasis added). On the facts before us, we conclude that counsel's actions were neither timely nor excusable under the rule. Even if we accepted as true the allegation that both Mr. Raskin and his client failed to receive notice from the Court of the disallowance of Robert's claim on September 5,[14] counsel admits that he had actual knowledge of the objection as early as August 15, 1985, when he received a copy of the objection from the trustee, and he was certainly obligated to act *in timely fashion* in responding to that objection, if not within the precise time prescribed in Local Rule 10. Mr. Raskin's claim that he is the victim of discriminatory conduct by the Clerk is pure afterthought.

■ While the method adopted by the Clerk (and probably approved by this writer) of attempting to familiarize the bar of the change in practice under Rule 10 was, with hindsight, not failsafe, and necessarily arbitrary in its application, the entire procedure was intended to and did in fact benefit litigants and the bar generally. We note that there has been no suggestion that anyone other than Mr. Raskin was misled

---

13. *See In re Belanger,* 60 B.R. 656, 658 (Bankr.D. R.I.1986) ("[w]e can safely say that Mr. Raskin handles more Chapter 13 cases than any other lawyer in Rhode Island").

14. It appears that the Clerk mailed only Cecile Robert (and not her counsel) a copy of the order disallowing her claim, and she denies having received it.

or confused by the change in practice under Rule 10. Mr. Raskin acted at his peril when he put this matter indefinitely on the back burner, and he may not shift the blame for his failure to act timely, to the Clerk. It should also be kept in mind that the legend merely repeated the provisions of Local Rule 10, by reminding counsel of the need to file a response to an objection within ten days. *See In re Thermo Engineering Corp.*, 47 B.R. 656, 660 (Bankr.D. R.I.1985); *In re Maher*, 51 B.R. 848, 850 (Bankr.N.D.Iowa 1985); *In re Kirschner*, 46 B.R. 583 (Bankr.E.D.N.Y.1985); *In re Airport Marina, Inc.*, 31 B.R. 699 (Bankr. S.D.Fla.1983); *In re Griffis*, 31 B.R. 279 (Bankr.D.Vt.1983); *In re Parrish*, 13 B.R. 539 (Bankr.W.D.Ky.1981); *In re Breining*, 6 B.R. 837 (Bankr.S.D.N.Y.1980).

On October 31, 1985, Mr. Raskin telephoned the Clerk's Office to inquire about the status of Robert's claim, and he was advised that the claim had been disallowed on September 5, 1985. Even after learning that however, counsel waited *another thirty-five* days before taking any action to question or challenge the disallowance of Robert's claim. Assuming, arguendo, that claimant's counsel did not respond within ten days because of his reliance on the Clerk's (by then, discontinued) "transition or break in policy," no explanation has been offered for the additional thirty-five day delay. When Cecile Robert, through her attorney, became aware on October 31, 1985 that her claim had been denied, there arose a duty to proceed *expeditiously* to vacate the Court's order.[15] Fed.R.Civ.P. 60 requires that a motion to vacate must be filed within "a reasonable time." Under the circumstances, the delay of more than a month was clearly unreasonable, and warrants denial of the motion to vacate. *See In re World Wide Gifts, Inc.*, 10 B.R. 761 (Bankr.S.D.N.Y.1981).

The following circumstances also figure (independently) in our decision not to vacate the order disallowing Robert's claim: On November 1, 1985 the trustee filed an application to compromise an adversary proceeding against one Richard Rodi in the amount of $45,000 (Mr. Raskin received notice of the trustee's intention to compromise, but did not participate in any of the proceedings). Alden Harrington, Esq., counsel for the trustee in that action, testified that the amount of the allowed claims in the Carr bankruptcy was an important consideration in the decision to settle the *Rodi* matter, since that compromise was expected to produce a fund sufficient to allow payment in full to all unsecured creditors *whose claims were allowed*. Mark McSally, Esq., counsel for Rhode Island Hospital Trust National Bank (RIHT), a defendant in the *Rodi* litigation, and a creditor of this estate, testified that he also relied on the total amount of allowed claims in advising his client to make the offer. The trustee's application to compromise was granted on December 2, 1985. If Robert's attorney had responded to the trustee's objection to her claim, *in timely fashion*, a hearing could and would have been held *prior* to the consideration and settlement of the *Rodi* litigation. According to the trustee, if Robert's claim were allowed, as filed, creditors would receive an 87% dividend ($8,000 less for RIHT), instead of the 100% dividend which both the trustee and RIHT anticipated in settling the *Rodi* litigation. The prejudice to creditors is ascertainable and substantial, if the claim of Cecile Robert were now added to the general creditor body. *See In re Murphy*, 1 B.R. 736, 739 (Bankr.S.D.Cal.1979).

## CONCLUSION

Because: (1) the claimant has not demonstrated that her failure to file a response to the trustee's objection was the result of excusable neglect or other justifiable cause, (2) because she has offered no reason for an additional delay of thirty-five days after her counsel had actual knowledge of the disallowance of the claim, and finally (3) because said additional and unnecessary delay unfairly prejudiced other creditors, the motion to vacate is denied. In so concluding, we are not unmindful of

---

**15.** Local Rule 10 was designed to facilitate the speedy administration of bankruptcy cases.

the effect this ruling will have on the claimant, but Ms. Robert "voluntarily chose this attorney as [her] representative ... and cannot now avoid the consequences of the acts or omissions of this freely selected agent.... [E]ach party is deemed bound by the acts of [her] lawyer-agent ..." *Link v. Wabash R.R.*, 370 U.S. 626, 633–634, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962).

For the foregoing reasons, Robert's motion for reconsideration of the disallowance of her claim, and her motion to extend time to file a response to the trustee's objection, are denied.